**UNITED STATES of America, Appellee,**

v.

**Finnie Duarant HINES, Appellant.**

**No. 77–2556.**

United States Court of Appeals, Fourth Circuit.

Argued May 11, 1979.

Decided Sept. 6, 1979.

Marc D. Stern, New York City, for appellant.

Robert A. Rohrbaugh, Asst. U. S. Atty. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, BUTZNER and PHILLIPS, Circuit Judges.

BUTZNER, Circuit Judge:

Finnie Duarant Hines appeals his conviction on six counts of distributing counterfeit currency in violation of 18 U.S.C. §§ 2, 371, and 473. The sole issue is whether the district court erred when it allowed a government agent to repeat a statement that Hines had made after refusing to sign a waiver of his fifth and sixth amendment rights. We conclude that Hines effectively asserted his constitutional rights, but that subsequently he waived those rights when he made the challenged statement. We therefore affirm the judgment of the district court.

Hines obtained approximately $44,000 counterfeit currency in New York from a man identified only as "Lenny." Hines in turn entered into an agreement with Tyrone Washington and Odell Dye to dispose of the currency in Washington, D.C., and to pay Hines out of the proceeds.

Washington and Dye were arrested when they sold the counterfeit bills to an undercover agent of the United States Secret Service. Washington subsequently agreed to cooperate with the Secret Service in an effort to determine the original source of the counterfeit money. As a part of this plan, Washington induced Hines to fly to National Airport, ostensibly to receive the payment he had been promised and to discuss future purchases. The Secret Service arrested Hines in the airport following his meeting with Washington.

Immediately upon arrest, the agents informed Hines of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). During the trip to the Washington field office of the Secret Service, the agents again advised Hines of all *Miranda* rights. When they arrived at the field office, an agent read to Hines a form titled "Warning and Consent to Speak." In addition to the *Miranda* rights, that form contains a declaration, intended for the accused's signature, reading as follows: "I have read this statement of my rights and it has been read to me, and I understand what my rights are." The form provides a separate space in which the accused may also sign his name to the following declaration:

## WAIVER

I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my rights and I am willing to make a statement and answer questions.

Hines also read the form, said that he understood his rights fully, but refused to sign either of the declarations on the form. He said that he would prefer not to sign until he had contacted an attorney.

Soon afterwards, Hines asked the Secret Service agents to contact an agent of the Federal Bureau of Investigation named McMakintosh. The agents attempted to contact McMakintosh, but he was not available. Hines told the agents that McMakintosh had asked him to find out what he knew about any criminal activity. In response to this remark one of the agents inquired whether the FBI had instructed him to obtain and sell counterfeit currency. Hines said, "No." Then, without further questioning by the agents, he went on to explain that he had obtained $44,000 in counterfeit currency from Lenny in return for a promise to pay $15,000 in genuine currency. He also stated that he had given the counterfeit currency to Washington and Dye in return for their promise to pay $15,000.

At trial, overruling Hines' objection, the court permitted the agent to testify about his statement. Hines did not contest the facts contained in his statement. Instead, he claimed that he had lacked the necessary specific intent to violate the law because he had honestly and in good faith believed that he was working to secure information on counterfeiting for the FBI. He attempted to show that McMakintosh had asked him for information on crimes, and that his actions had been prompted by that request. He presented evidence that a mutual friend had introduced him as a possible informant to McMakintosh; that he had attempted to

inform McMakintosh about the counterfeit money; that he had gone to Washington to gather more information for the FBI; that he had given his friend some counterfeit bills to take to McMakintosh; and that after his arrest the friend did so.

McMakintosh testified that Hines had volunteered to become an informant, but that Hines had not told him anything about counterfeiting. He acknowledged that Hines' friend had delivered a counterfeit bill after Hines' arrest.

The district judge fully instructed the jury about Hines' defense, explaining to them that Hines contended that he was working for the government. He charged the jury that they should acquit Hines if they found that he acted in good faith. He emphasized that the government must prove beyond a reasonable doubt that Hines acted with specific intent to violate the law.

On appeal, Hines concedes that the agents gave him proper *Miranda* warnings. He argues, however, that his statement was taken in violation of his sixth amendment rights. He contends that his expressed desire to speak with an attorney before signing the form precluded any questioning. Hines also argues that his subsequent conduct did not amount to an express or implied waiver of the right to counsel.

Hines' refusal to sign the form does not conclusively establish the absence of waiver. *See North Carolina v. Butler,* — U.S. —, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Nevertheless, his assertion that he would prefer to consult with an attorney barred his interrogation. The agents observed this restriction.

A defendant who has been fully informed of his rights, who understands those rights, and who nevertheless spontaneously and voluntarily discloses information to persons he knows to be law enforcement officers, may not invoke *Miranda* to exclude his statement at trial. In that situation, no sixth amendment right is violated. *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Grant,* 549 F.2d 942, 946 (4th Cir. 1977). These principles are applicable to Hines. It was he who spontaneously initiated the discussion about his involvement with the FBI. The agent's subsequent inquiry sought only clarification of this aspect of the incident. After answering the agent, Hines voluntarily, and not in response to any interrogation, described his participation in the counterfeiting transactions. Hines is well educated and he fully understood his rights. There is no evidence of any improper conduct on the part of the agent. Moreover, Hines' statement was consistent with his defense. These facts buttress the inference of an implicit waiver of his right to counsel and establish that his statement was voluntary. In these circumstances there was no violation of Hines' sixth amendment rights.

*AFFIRMED.*