UNITED STATES of America, Appellee,

v.

Calvin Demonsier CLEMENTS,
Appellant.

No. 82–5238.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 7, 1983.
Decided July 28, 1983.

John Preston Bailey, Wheeling, W.Va. (Bailey, Byrum & Vieweg, Wheeling, W.Va., on brief), for appellant.

Henry Brann Altmeyer, third year law student (William A. Kolibash, U.S. Atty., Wheeling, W.Va., on brief), for appellee.

Before ERVIN and CHAPMAN, Circuit Judges, and BRYAN, Senior Circuit Judge.

ERVIN, Circuit Judge:

Calvin Demonsier Clements was convicted by a jury of purchasing a firearm despite a previous state felony conviction and of making false statements on his application for the firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 922(h)(1)(1982). On appeal, Clements contends that his sixth amendment right to the assistance of counsel was violated by the admission of an uncounseled confession he made shortly af-

ter his arrest. Clements also assails the validity of the district court's jury instructions and of its denial of his motion for a continuance of his sentencing hearing. We discern no error in the jury instructions or in the denial of the continuance, but we remand the case to enable the district court to make the factual findings necessary to a determination of Clements' sixth amendment claim.

I.

On April 16, 1982, Clements, who previously had been convicted in a Virginia state court of a felony punishable by a sentence exceeding one year's imprisonment, was indicted by a federal grand jury in West Virginia. On April 19, at about 8:00 a.m., as he was returning home from his third-shift job, Clements was arrested in Wheeling, West Virginia, by agents of the Federal Bureau of Alcohol, Tobacco and Firearms (the ATF) and of the state and local police. Immediately upon arrest, Clements was informed that he would be shown the warrant for his arrest when he was brought before a magistrate. While being transported to the local police station, an ATF agent informed Clements of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[1] The agent then asked Clements if he understood these rights, and Clements responded in the affirmative. The agent later testified, somewhat hesitantly, that he also told Clements of the pending indictment either at the time of arrest or while in the car.[2] Clements flatly

---

[1] The explanation of Clements' *Miranda* rights was read verbatim from a card provided the agent by the ATF:

> Before we ask you any questions, it is my duty to advise you of your rights. You have the right to remain silent. Anything you say can be used against you in Court or other proceedings. You have the right to consult an attorney before making any statement or answering any question and you may have him present with you during questioning. You may have an attorney appointed by the Court to represent you if you cannot afford or otherwise obtain one. If you decide to answer questions now with or without a lawyer, you still have the right to stop questioning at any time or stop questioning for the

purpose of consulting a lawyer. However, you may waive your right to advice of counsel and your right to remain silent and you may answer questions or make a statement without consulting a lawyer if you so desire.

[2] During cross-examination of the ATF agent by defense counsel at the hearing on Clements' suppression motion, the following colloquy occurred:

> Q. Did you tell him that he had been indicted by a grand jury?
> A. Yes sir, I believe I did.
> Q. When did you tell him that?
> A. I believe after I advised that we had a federal arrest warrant.

denied that he learned of the indictment prior to coming before the magistrate.[3]

After arriving at the police station, the ATF agent again read Clements the ATF *Miranda* formula. Clements then agreed to make an inculpatory, tape-recorded statement. He also consented to a search of his home by law enforcement officers for the .22 caliber rifle named in the indictment. Armed with Clements' consent, and a state search warrant for the rifle, the officers engaged in a lengthy examination of Clements' home, eventually discovering a 9mm handgun as well as the rifle. The government subsequently obtained a superseding indictment charging Clements with illegal receipt of the handgun as well as the rifle.

Clements moved before trial to suppress his confession and the two firearms discovered during the search. The district court ruled the search warrant invalid because issued by a state judge for a search outside the latter's jurisdiction, but found that Clements had consented to a search of his home for the rifle. The court expressly disbelieved the officers' claim that they discovered the handgun before finding the rifle, which was apparently in plain view. The court therefore admitted the rifle and suppressed the handgun. The court also found that although Clements was extremely tired from working a night shift, he was not tricked or overborne by the officers, and that his waiver of counsel and his confession were made intelligently and voluntarily. The district judge stated that whether or not Clements was informed of his indictment prior to making his confession was not "of critical importance," and declined to resolve the discrepancy between Clements' testimony on the issue and that of the agent.

3. Clements was questioned at the suppression hearing by his attorney:

Q. Mr. Clements, at any time between the time that you initially made contact with the men who arrested you on April 19, 1982, and the time at which this tape recording was made, did any of the officers or agents present inform you that you had been indicted?

At trial, the handgun count of the indictment was dismissed on Clements' motion. The government's evidence tended to show that Clements had purchased the rifle found during the search and had falsely answered "no" to a question about his past criminal record on a standard form he filled out while making the purchase. The jury found him guilty of both remaining counts, and the sentencing hearing was set for July 28. On July 22, Clements was informed by letter that the presentence report was now available to him. At the hearing Clements moved for a continuance for the purpose of obtaining affidavits from distant witnesses to rebut certain statements in the report. The court denied Clements' motion, struck some items from the report, and sentenced Clements to two consecutive five year terms.

## II.

Clements contends that the district court erred in finding that he knowingly and intelligently waived his sixth amendment right to counsel, as opposed to his fifth amendment *Miranda* right. In Clements' view it is critical that, according to his version of the facts, he was not informed that he was under indictment before being asked to make a statement.

The sixth amendment guarantees the accused in a criminal prosecution the right "to have the assistance of counsel for his defense." In *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the Supreme Court held that this right attaches upon an individual's indictment by a grand jury and that the right is violated when admissions are elicited from an indicted person in the absence of counsel. It is clear, therefore, that Clements' sixth

A. No, sir.
Q. Did any of them give you a copy of the indictment?
A. No, sir.
Q. Did any of them tell you what an indictment means and what the ramifications are for a person?
A. No, sir.

amendment right had attached already at the time of his arrest.

■ The right to counsel guaranteed by the sixth amendment is analytically distinct from the right to counsel mandated by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In order to secure the fifth amendment privilege against self-incrimination, the Constitution as construed by the *Miranda* Court requires certain procedural safeguards, including a right to the assistance of counsel during custodial interrogation. The sixth amendment right to counsel, on the other hand, is an independent constitutional privilege of fundamental significance. *See Rhode Island v. Innis,* 446 U.S. 291, 300 n. 4, 100 S.Ct. 1682, 1689 n. 4, 64 L.Ed.2d 297 (1980) (policies underlying *Miranda* right to counsel and sixth amendment right "are quite distinct"); *Brewer v. Williams,* 430 U.S. 387, 397, 97 S.Ct. 1232, 1238, 51 L.Ed.2d 424 (1977) (*Miranda* and sixth amendment protect different rights).

Opinions vary about what differences this analytical distinction should make. The better view, we believe, is that courts should, among other things, apply a stricter standard of review to prosecution claims that counsel was waived in sixth amendment cases than is required in *Miranda* cases. *See United States v. Satterfield,* 558 F.2d 655, 657 (2d Cir.1976); *United States v. Brown,* 569 F.2d 236, 240 (5th Cir.1978) (Simpson, Cir. J., dissenting). The basis for this stricter standard has to do with the different policies underlying *Miranda* and the sixth amendment alluded to by the Supreme Court in *Innis.* In a pure *Miranda* situation, where the sixth amendment right has not come into play, the police are involved in their proper business of investigating crime. The person being questioned is not a "defendant" in the criminal process, with all of the extraordinary safeguards the Constitution affords such individuals. Fur-

thermore, cooperation with the police may benefit the individual; he may never become a "defendant" at all, or may be charged with a lesser crime than if he remains silent and unhelpful. On the other hand, once an indictment has been returned, both police and questionee occupy quite different stances. The government has assembled its case against the now-defendant, at least to the satisfaction of a grand jury. Further police questioning is not legitimate investigation, but a species of discovery.[4] The defendant, meanwhile, has been vested with the full procedural rights the Constitution affords the target of the government's prosecutorial power. He has much less to gain from talking: it is by definition too late to avert the beginning of a criminal prosecution.

■ The *Miranda* right to counsel is required for empirical reasons, because we recognize the psychological realities of a custodial interrogation and the difficulty a confused, legally-unlearned person may experience in preserving the constitutional privilege against self-incrimination while undergoing custodial interrogation. In contrast, the sixth amendment right to counsel is a constitutional constraint on government action forbidding interaction with a person against whom criminal prosecution has been initiated unless the opportunity to obtain counsel has been afforded.[5]

■ Waiver of the sixth amendment right to counsel may not be presumed from a silent record, but may be found only when the evidence shows "that an accused was offered counsel but intelligently and understandingly rejected the offer." *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962). Since the sixth amendment forbids the questioning of the defendant in the absence of counsel unless the defendant waives that privilege, "it takes

---

**4.** We do not question, of course, the propriety of continued investigation of other suspected criminal activity of an indicted defendant. But any such investigation must abide by the constraints of the sixth amendment. *See United States v. Anderson,* 523 F.2d 1192, 1196 (5th Cir.1975).

**5.** "Proof of formal interrogation is unnecessary to invoke the protection of the sixth amendment. A conversation that is tantamount to interrogation is sufficient." *Henry v. United States,* 590 F.2d 544, 547–48 (4th Cir.1978) (Butzner, Cir. J., concurring), *aff'd,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

more than a prisoner's answer to a question to waive his right not to have the question asked in the first place." *Innis,* 446 U.S. at 314 n. 14, 100 S.Ct. at 1696 n. 14 (Stevens, J., dissenting). The court reviewing a claim of waiver should "indulge every reasonable presumption against waiver." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). There need not be, however, an explicit statement of waiver by the defendant. *Cf. North Carolina v. Butler,* 441 U.S. 369, 373 n. 4, 99 S.Ct. 1755, 1757 n. 4, 60 L.Ed.2d 286 (1979) (*Miranda* right to counsel case) ("our decision today . . . is merely that a court may find an intelligent and understanding rejection of counsel in situations where the defendant did not *expressly* state as much") (emphasis in original). A finding of waiver of counsel cannot be made on the basis of a simple inquiry into past events: "the question of waiver [is] not a question of historical facts, but one which . . . requires 'application of constitutional principles to the facts as found.'" *Brewer,* 430 U.S. at 403, 97 S.Ct. at 1241 (citation omitted). *See also Cahill v. Rushen,* 678 F.2d 791, 795 (9th Cir.1982) (question of waiver is one of constitutional law, not of fact).

■ For the prosecution to demonstrate waiver, it must present evidence allowing the court to find several interlocked but distinct elements. In a recent *Miranda* case the Supreme Court cautioned that "waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981). The same is true *a fortiori* of waivers of the sixth amendment right. A valid waiver of sixth amendment counsel must be the voluntary act of the defendant free of coercion, physical or psychological, subtle or overt. *See Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (police officer's successful attempt to exploit defendant's religious scruples infringed sixth amendment). The defendant must realize that his or her actions are a waiver of a constitutional privilege. *See United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980)

(government plant of informer in defendant's cell infringed sixth amendment). Most importantly for this appeal, the defendant must know what constitutional right he or she is waiving, and possess some basic understanding of the meaning of that right. *See generally Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (valid waiver of constitutional right is "ordinarily an intentional relinquishment of a known right or privilege").

There is no uniform approach to the business of determining whether counsel has been waived. Courts in the Second Circuit follow the strictest rule:

[A]fter judicial proceedings are initiated and the right to counsel attaches, a defendant in a criminal case may effectively waive the assistance of counsel only after being advised of his constitutional rights by a judicial officer, whose duty it is to explain to the defendant the content and significance of those rights and of the charges lodged against him.

*United States v. Giacalone,* 508 F.Supp. 39, 43 (S.D.N.Y.1980). A "failure to advise [an accused] of the indictment against him, or to take reasonable steps to ascertain that he knows of the indictment, precludes a finding that [the defendant] knowingly, voluntarily and intelligently waived his sixth amendment right to counsel." *Carvey v. LeFevre,* 611 F.2d 19, 22 (2d Cir.1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 276 (1980). However, even if the accused is informed of the indictment as well as given *Miranda* warnings, the Second Circuit may still refuse to find waiver: "nor in this case can merely informing defendant of the fact of his indictment be considered a satisfactory substitute for a clear and explicit explanation of the Sixth Amendment rights defendant is giving up." *United States v. Mohabir,* 624 F.2d 1140, 1150 (2d Cir.1980). The First Circuit, while refusing to decide whether to adopt the *per se* requirement that the accused be told of the indictment, has indicated that "an unrevealed indictment might be significant if ignorance of it precludes defendant from being able to appraise his position and therefore from making an intelligent waiv-

**1036**

er." United States v. Payton, 615 F.2d 922, 924 (1st Cir.1980). At the other end of the spectrum, the Fifth Circuit has repeatedly found a waiver of sixth amendment rights where the defendant' was given *Miranda* warnings and indicated in some fashion that he understood those warnings. *See, e.g., Jordan v. Watkins,* 681 F.2d 1067, 1075 (5th Cir.1982) (defendant responded affirmatively when asked if he understood his *Miranda* rights); *United States v. Brown,* 569 F.2d 236 (5th Cir.1978) (*en banc*) (defendant signed a *Miranda* waiver form).

▆▆▆▆ We cannot agree with the Fifth Circuit's approach. The *Miranda* and sixth amendment rights to counsel are not fungible; waiver of the *Miranda* safeguards does not imply necessarily that the individual is willing to forego a lawyer's assistance during questioning if a criminal prosecution has already commenced. On the other hand, we do not think that enforcement of the sixth amendment requires adoption of the Second Circuit's rule that waiver be preceded by an explanation of the amendment's guarantee of counsel by a judicial officer. However, we hold that in order for a waiver of sixth amendment counsel by an individual who has been indicted already to meet the constitutional requirements of knowledge and comprehension, that individual at a minimum must be informed that he or she is under indictment, unless the individual has actual or constructive knowledge of the indictment.[6] In light of this conclusion, we cannot determine on the present record the validity of Clements' waiver. As we noted above, the district court declined to resolve the evidentiary conflict between Clements' testimony and that of the ATF agent. If Clements' confession and his consent to a search for the rifle were obtained

prior to his being informed of the indictment, their admission was not harmless error. Therefore, we must remand the case for a determination by the district court of when Clements was first informed that he had been indicted.

### III.

Clements contends that the district judge's jury instructions were fatally defective because they did not require the jury to find that he "willfully" made a false statement on the form he filled out when he bought the rifle, and because they did not require the jury to find that he knew his possession of the rifle was illegal. Clements bases his argument on the inclusion of the words "willfully" and "knowingly" in the indictment, and on an alleged due process requirement that all status offenses include a criminal scienter element. Clements cites two decisions by this court that he claims support his position. In *United States v. Behenna,* 552 F.2d 573 (4th Cir. 1977), the defendant was charged with "knowingly" misstating his state of residence in connection with the purchase of a firearm. This court reversed his conviction while observing that an indictment lacking the word "knowingly" would not have required that result. *Id.* at 575. In *United States v. Hedgecoe,* 420 F.2d 458 (4th Cir. 1970), the defendant was charged with falsely signing a statement that he was not prohibited by the Omnibus Crimes Control and Safe Streets Act of 1968 from acquiring a gun. This court reversed, as in *Behenna,* because the trial court had not required the jury to find that the defendant knew he was making a false statement.

---

**6.** This holding does not conflict with our decision in *United States v. Hines,* 605 F.2d 132 (4th Cir.1979), *cert. denied,* 444 U.S. 1046, 100 S.Ct. 735, 62 L.Ed.2d 733 (1980). The inculpatory statement at issue in *Hines* was made after arrest but before indictment. Nor is our holding in the present appeal precluded, as the government maintains, by the Supreme Court's *Butler* decision, which merely rejected the view that waiver can never be inferred on a proper record. *See Butler,* 441 U.S. at 373 n. 4, 99 S.Ct. at 1757 n. 4. This holding is in no way

inconsistent with a requirement that police inform an individual of the fact of indictment prior to questioning that person. *See Payton,* 615 F.2d at 924 (*Butler* and Second Circuit rule on waiver of sixth amendment counsel not inconsistent) (by implication).

Contrary to the dissent's suggestion, this holding does not ordain a blanket per se rule. We assume, without deciding, that a different result would follow if the interrogating officer were unaware of the indictment.

These decisions are readily distinguishable. In both cases it was conceivable that the defendant's statement, while untrue, was made without the intent to lie. In *Behenna* the defendant had moved to South Carolina only shortly before purchasing the gun and had not yet established legal residence there. In *Hedgecoe*, knowledge of the contents of a specific federal statute was required to answer correctly the form which the defendant signed. In the present case, on the other hand, Clements signed a statement representing that he had never been convicted of a crime punishable by over a year's imprisonment, although he knew that he had been convicted of such a crime and imprisoned for over a year by the Commonwealth of Virginia. Furthermore, the district judge did in fact instruct the jury on willfulness and specific intent. Finally, there is no general constitutional requirement that the definition of a crime incorporate the element of criminal scienter. There was no error in the jury instructions.

## IV.

Clements attacks the district judge's refusal to grant him a continuance to prepare rebuttal to the presentence report. That decision was within the district judge's discretion. Clements has presented this court with no concrete explanation of how the judge's decision was an abuse of that discretion.

## V.

We find no error in the district court's jury instructions or in its denial of Clements' motion for a continuance of his sentencing hearing. However, we remand the case for a factual determination by the district court of when Clements was informed he had been indicted. If Clements' inculpatory statements and his consent to a search for the rifle were given prior to being told of the indictment, the confession and the rifle must be suppressed, and Clements granted a new trial.[7]

**REMANDED.**

7. *See United States v. Morrison*, 449 U.S. 361,

CHAPMAN, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from that portion of the majority opinion holding that this case must be remanded to the district court for a determination of whether Clements' confession and his consent to a search for the rifle were obtained prior to his being informed of the indictment.

### I

Before discussing the new rule which the majority opinion establishes on waiver of a defendant's sixth amendment right to counsel, I would point out that, even if the introduction of Clements' confession and the rifle violated his right to counsel, the introduction of this evidence was harmless error because both the rifle and the confession were simply cumulative of other evidence of guilt. In light of the substantial evidence of defendant's guilt independent of the confession and the rifle, I would hold that it is clear "beyond a reasonable doubt that the errors [the defendant complains of] did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In order to establish that a defendant has "received" a firearm in violation of 18 U.S.C. § 922(h)(1) (1982), it is not necessary to show that the defendant actually possessed a firearm in violation of that statute. The statute is violated by a showing that the defendant took possession of *or* knowingly accepted the firearm. *United States v. Turnmire*, 574 F.2d 1156 (4th Cir.1978). Accordingly, Clements' purchase of the rifle constituted receipt or acceptance of a firearm independent of his subsequent possession of the firearm. Clements' purchase of the rifle was established by the testimony of a sales clerk from the store where the rifle was purchased and by the testimony of both the defendant and his wife. Further, the Alcohol, Tobacco, and Firearms (ATF) Form 4473 which the defendant was required to complete before purchasing the rifle contained a signature which was connected to the defendant by the govern-

365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981).

ment's handwriting expert. This evidence was more than adequate to show receipt of the rifle and the evidence that the rifle was found in the defendant's home two years after its purchase could not have contributed more than slightly to Clements' conviction on the charge of illegal receipt of the rifle.

There was also substantial independent evidence to convict Clements on the other count of the indictment that charged him with making a false statement on ATF Form 4473. As stated above, the defendant's signature on the form was connected to Clements by the government's handwriting expert. In addition, the testimony of the sales clerk established that Clements read and completed the form in her presence.

## II

Though I think it is unnecessary to reach the issue of whether Clements' sixth amendment right to counsel was violated by the introduction of the rifle and his confession, the majority's treatment of that issue forces me to dissent.

The majority establishes a per se rule that a defendant may never waive his right to counsel subsequent to indictment unless the defendant has been informed that he is under indictment or has actual or constructive knowledge of the indictment. This rule rests on the assumption that the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are insufficient to inform a defendant of his sixth amendment right to counsel. I cannot accept this assumption. The language of the district court in its order denying Clements' motion to suppress is instructive:

> When Clements was first arrested and again at the beginning of the taped interview, he was given the now familiar *Miranda* warnings. Although the "prime purpose of *Miranda* was to guarantee full effectuation of the privilege against self-

incrimination," *Johnson v. New Jersey,* 384 U.S. 719, 729 [86 S.Ct. 1772, 1778, 16 L.Ed.2d 882] (1966), it is clear that the warnings given here informed Clements of his sixth amendment right to counsel, as well as his fifth amendment right to protection against self incrimination.

*United States v. Clements,* No. 82–00016–E(H) (N.D.W.Va., filed Aug. 13, 1982).

The majority recognizes that "there is no uniform approach to the business of determining whether counsel has been waived." *Ante* at 11. The Courts of Appeal that have directly addressed the issue have taken varying approaches. The majority opinion does a commendable job of reviewing the decisions of the other circuits and I do not disagree with its interpretations of those decisions. However, I do disagree with the conclusion it seeks to draw.

Only the Second Circuit has gone so far as to adopt a per se rule requiring that a defendant be informed of a pending indictment before he can exercise an "intentional relinquishment or abandonment," *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), of his sixth amendment right to counsel. *United States v. Mohabir,* 624 F.2d 1140, 1153 (2d Cir. 1980).[1] The Fifth Circuit, on the other hand, has taken a case by case approach that evaluates all the circumstances of a particular case to determine whether a defendant possessed knowledge of his right to counsel and intentionally relinquished that right. *See, e.g. Jordan v. Watkins,* 681 F.2d 1067, (5th Cir.1982); *United States v. Brown,* 569 F.2d 236 (5th Cir.1978) (*en banc*).

I think the Fifth Circuit's approach is more reasoned. The majority characterizes the Fifth Circuit decisions in *Jordan* and *Brown* as finding waivers of sixth amendment rights solely from the fact that the defendants were given *Miranda* warnings and indicated an understanding of those

---

**1.** The Second Circuit rule, in fact, goes further than the requirement that the defendant be informed of a pending indictment. It requires that, before a defendant in a federal prosecution can waive his sixth amendment right to

the presence of counsel during post indictment interrogation, he must be taken before a federal judicial officer to have the right explained to him. *United States v. Mohabir,* 624 F.2d 1140, 1153 (2d Cir.1980).

warnings. Although *Miranda* warnings certainly played an important part in each case, the findings of waiver did not rest solely on the use of those familiar warnings. In *Jordan,* the defendant was twenty-nine years old, possessed the educational equivalent of two years of college, and had the experience of seven years in "the service" in personal management and air traffic control. He was given *Miranda* warnings at least four times before he made the challenged confession and he responded "Yes, I do" when asked after the last warning if he understood his rights. Finally, there was no evidence that the defendant's statement was influenced by an atmosphere of inducement and coercion. 681 F.2d at 1074. In *Brown,* the defendant was a college graduate who had worked as an elementary school teacher for thirteen years. In the days before she made the challenged statement, she had been advised of her rights by a security guard and a city policeman in connection with related state charges. Immediately before she made the statement, *Miranda* warnings were read to her and she read and signed an express waiver of rights form. The interrogation took place in a public corridor shortly before the defendant's preliminary hearing on the related state charges and there was no evidence of any improper inducement or coercion. 569 F.2d at 238–239.

Clements, at the time of his confession, was a 33 year old electrical maintenance foreman who had completed high school, nine hours of college credits and various electronics courses and seminars. Before he was given any *Miranda* warnings and in response to Special Agent Webb's statement that he had a warrant for Clements' arrest for violations of federal firearms laws, Clements stated that he thought his arrest involved a firearm charge and began discussing the firearm in question, a Marlin .22 rifle.[2] Clements was stopped at this point by Special Agent Webb and informed of his *Miranda* rights and he responded that he understood those rights. Before he gave a second, taped version of his statement, Clements was again informed of his *Miranda* rights and he again responded that he understood those rights. Clements was not detained or questioned for such a period of time that would give rise to any inference of improper coercion and there was no other evidence of coercion. Only forty minutes elapsed between the time Clements was arrested and the time his taped interview with ATF agents was completed.

Finally, and most importantly, a considerable portion of the standard ATF *Miranda* warnings form which was read to Clements before questioning is devoted to an explanation of a defendant's right to counsel.[3] Clements does not argue that his waiver was made unwillingly or in response to any kind of trickery. He does not dispute that he knew of his right to consult an attorney before questioning and have an attorney present during questioning. His only argument is that knowledge of his indictment was necessary to make his waiver intentional and knowing within the meaning of *Johnson v. Zerbst.*

On the facts of this case, it cannot be said that knowledge of the indictment was nec-

**2.** I do not mean to suggest that these somewhat "spontaneous" statements given before Clements was advised of his *Miranda* rights should be treated any differently from the statements Clements made after receiving *Miranda* warnings. However, these statements do offer additional evidence of the lack of inducement or trickery surrounding Clements' statement and of the intentional nature of Clements' waiver of his sixth amendment right to counsel.

**3.** The text of the warnings is as follows:
Before we ask you any questions, it is my duty to advise you of your rights. You have the right to remain silent; anything you say can be used against you in court or other proceedings; you have the right to consult an attorney before making any statement or answering any questions; you may have him present with you during questioning; you may have an attorney appointed by the Court to represent you if you cannot afford or otherwise obtain one; if you decide to answer questions now with or without a lawyer, you still have the right to stop questioning at any time or to stop questioning for the purpose of consulting a lawyer; however, you may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire.

essary in order for Clements' waiver to be knowing and intentional. Although no decision of the Supreme Court precludes the per se rule adopted by the majority, it is equally true that such a rule is not required by any Supreme Court decision.[4] Only the Second Circuit has seen fit to adopt a per se rule.[5] Although the majority disavows ordaining a per se rule, *ante* 1036 n. 6, I see no difference in what it has done and a per se rule where the investigating officer is aware of the indictment. If the purpose of the majority's ruling is to protect the rights of a person under indictment, why should there be a difference as to whether the interrogating officer knew or did not know of the indictment? If there is a distinction, it indicates the purpose of the rule is to punish the officer and not to protect the rights of the accused.

I think the rule contributes no further protection to the sixth amendment rights of criminal defendants and that we should refrain from adopting what appears to be an inflexible rule.

---

**4.** The Supreme Court's approach to waiver of a defendant's sixth amendment right to have counsel present during post-indictment interrogation is illustrated by *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In *Brewer*, the court's finding of no waiver was based on a consideration of the totality of the circumstances surrounding the defendant's confession, an approach which implicitly counsels against the use of per se rules. More recently, in *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) the Supreme Court considered the per se rule employed by the North Carolina Supreme Court which prevented the introduction in evidence against a defendant of his statement given during custodial interrogation unless the defendant had explicitly waived his right to the presence of a lawyer. The court held that the North Carolina Supreme Court's per se rule was not required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) or any other principles of constitutional law. During its discussion of waiver of constitutional rights, the court made the following observation

which, although dicta, may be indicative of the court's approach to the use of per se rules to decide questions of waiver of constitutional rights:

> This is not the first criminal case to question whether a defendant waived his constitutional rights. It is an issue with which courts must repeatedly deal. Even when a right so fundamental as that to counsel at trial is involved, the question of waiver must be determined on "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]. See also *United States v. Washington*, 431 U.S. 181, 188 [97 S.Ct. 1814, 1819, 52 L.Ed.2d 238]; *Schneckloth v. Bustamonte*, 412 U.S. 218 [93 S.Ct. 2041, 36 L.Ed.2d 854]; *Frazier v. Cupp*, 394 U.S. 731, 739 [89 S.Ct. 1420, 1424, 22 L.Ed.2d 684].

441 U.S. at 374–75, 99 S.Ct. 1757–58 (1979).

**5.** *United States v. Mohabir*, 624 F.2d 1140, 1153 (2d Cir.1980).