UNITED STATES OF AMERICA,
Plaintiff–Appellee,

v.

Ceno MUCA, a/k/a Sam,
Defendant–Appellant.

No. 90–5158.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1990.

Decided Sept. 4, 1991.

As Amended Sept. 12, 1991.

Lawrence Jay Fine, Winston–Salem, N.C., for defendant-appellant.

Robert Holt Edmunds, Jr., U.S. Atty., Greensboro, N.C., for plaintiff-appellee.

Before WIDENER and MURNAGHAN, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

OPINION

WIDENER, Circuit Judge:

■ Ceno Muca appeals from his conviction for conspiracy to possess with intent to distribute and to distribute heroin in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1). He raises one argument on appeal. He contends that the district court erred in finding that he had knowingly and intelligently waived his Sixth Amendment right to counsel when a special agent of the Federal Bureau of Investigation questioned him after giving him *Miranda* warnings without telling him that he had already been indicted.[1]

We note at the outset that the Supreme Court specifically reserved this issue in *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988).[2] However, the Court in *Patterson* concluded that there is no analytical distinction between the validity of a waiver under the Sixth or

1. We addressed this issue previously in *United States v. Clements*, 713 F.2d 1030 (4th Cir.1983), *vacated and district court judgment affirmed by an equally divided court*, 728 F.2d 654 (4th Cir. 1984) (*en banc*), *cert. denied*, 469 U.S. 836, 105 S.Ct. 132, 83 L.Ed.2d 73 (1984).

2. While rejecting the notion that something more than *Miranda* warnings would be required for a postindictment waiver the court commented that:

An exception to this is the occasional suggestion that, in addition to the *Miranda* warnings, an accused should be informed that he

has been indicted before a postindictment waiver is sought. [Citations omitted]. Because, in this case, petitioner concedes that he was so informed ... we do not address the question whether or not an accused must be told that he had been indicted before a postindictment Sixth Amendment waiver will be valid. Nor do we even pass on the desirability of so informing the accused—a matter that can be reasonably debated.

*Patterson*, 487 U.S. at 295–96 n. 8, 108 S.Ct. at 2396–97 n. 8.

Fifth Amendments and that *Miranda* warnings would generally suffice to inform a defendant of his Sixth Amendment right to counsel. Since that decision, the Third Circuit has specifically considered and rejected the argument that a defendant cannot knowingly and intelligently waive his postindictment Sixth Amendment right to counsel without first being informed of his indictment in *Riddick v. Edmiston,* 894 F.2d 586 (3rd Cir.1990). And *Quadrini v. Clusen,* 864 F.2d 577 (7th Cir.1989) has held, relying on *Patterson,* that a valid *Miranda* waiver, given after the right to counsel had arisen, included the Sixth Amendment right to counsel.

After considering the opinions of our sister circuits, and the reasoning behind the Supreme Court's opinion in *Patterson,* we believe that the *Miranda* warnings given Muca were sufficient to advise him of his postindictment Sixth Amendment right to counsel.[3] Accordingly we hold that he knowingly and voluntarily waived that right when he made the inculpatory statements to the special agents and that those statements were properly admissible at trial. Thus, the decision of the district court is affirmed.

Muca's conviction arose out of a government investigation into the importation and trafficking in white heroin from Sicily, Italy. Based upon information gained in this drug conspiracy investigation, Muca was indicted on May 31, 1988. However, it was not until nearly one year later, on May 9, 1989, that Muca was finally apprehended in Mexico. The legal attache in Mexico then transported Muca to the Dallas–Fort Worth Airport where he was placed in the custody of federal agents. The agents identified themselves and advised Muca that he was under arrest for violations of the drug laws of the United States. Muca was then transported to the Department of Public Safety at the airport where he was asked to read and sign a *Miranda* rights waiver form. After reading the form and stating that he understood his rights, Muca executed the included rights waiver without requesting the advice of counsel. The following day, Muca was transported to an appearance before a federal magistrate. Prior to entering the car, Muca was again showed the signed rights waiver and asked whether he understood the information it contained. He responded in the affirmative.

During his transport to the appearance, Muca was questioned by one of the FBI agents to obtain information for the pretrial services interview process. In response to these questions Muca made certain inculpatory statements regarding family members, his residence history in the United States, and his involvement in the heroin smuggling conspiracy. Prior to trial, Muca moved to have these statements suppressed. After hearing testimony and examining the signed rights waiver form, the district court denied Muca's motion to suppress and ruled that the statements were admissible.

3. The rights waiver form provided to Muca was as follows:

INTERROGATION; ADVICE OF RIGHTS
*YOUR RIGHTS*
Place *Dallas/Ft. Worth Airport*
Date *5/9/89*
Time *7:16*
Before we ask you any questions, you must understand your rights.
You have the right to remain silent.
Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.
If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.
*WAIVER OF RIGHTS*
I have read this statement of my rights and I understand what my rights are. I am wiling to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.
Signed */s/Ceno Muca*
Witness: */s/Larry J. Allred, S.A., FBI, 5/9/89*
Witness: */s/Morgan P. Bodie III, S.A., FBI, 5/9/89*
Time: *7:19 pm*

At the subsequent trial, these statements were utilized by the government during its case-in-chief and Muca was convicted under the above mentioned indictment. He was sentenced to a term of one hundred and thirty months of incarceration.

█ We turn now to Muca's claim on this appeal. In making his claim that the failure to inform him of his indictment precluded his *Miranda* waiver from waiving his Sixth Amendment right to counsel, Muca relies, in part, upon a Second Circuit line of cases that require a higher standard to waive the Sixth Amendment right to counsel than the standard utilized in Fifth Amendment waiver analysis. See *United States v. Mohabir*, 624 F.2d 1140 (2d Cir. 1980); *United States v. Satterfield*, 558 F.2d 655 (2d Cir.1976). However, the continued validity of this line of cases is questionable in view of the Supreme Court's holding in *Patterson* that *Miranda* warnings will suffice to make a defendant aware of his Sixth Amendment right to counsel in the context of postindictment questioning. *Patterson*, 487 U.S. at 296, 108 S.Ct. at 2397.

Yet, Muca points out that despite this holding, the Court left open the question which he now raises because the defendant in that case had been informed of his indictment. *Patterson*, 487 U.S. at 295–96 n. 8, 108 S.Ct. at 2396–97 n. 8. Subsequent to this decision however, this precise question has been treated by the Third Circuit which has what we believe to be the correct view.

In *Riddick v. Edmiston*, James Riddick, who had been convicted of voluntary manslaughter and unlawful possession of a handgun, sought federal habeas relief. The Third Circuit held that despite a failure to advise him that he had been indicted on a murder charge, valid *Miranda* warnings were sufficient to advise him of his Sixth Amendment right to counsel and to support a waiver of that right. 894 F.2d 586, 590–91 (3rd Cir.1990). The Seventh Circuit reached a similar conclusion, depending on *Patterson*, in holding a confession admissible in *Quadrini v. Clusen*, where the accused, who knew that he was arrested for murder, freely chose to speak to police after having been administered *Miranda* warnings and after a right to counsel had arisen. 864 F.2d 577, 585–87 (7th Cir.1989) (review of a denial of habeas relief).

Further, the decision in *Patterson* lends support to this view. In *Patterson*, the Court stated that the key inquiry to determine the validity of a Sixth Amendment waiver was whether "the accused, who waived his Sixth Amendment rights during postindictment questioning, [was] made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forego the aid of counsel[.]" *Patterson*, 487 U.S. at 292–93, 108 S.Ct. at 2394–95.

The Court articulated several reasons for this conclusion. First, *Miranda* warnings make it clear that an accused has a right to have a lawyer present during questioning, to consult with a lawyer, and even to have one appointed for him if he could not afford one on his own. These statements convey to the accused "the sum and substance of the rights that the Sixth Amendment provide[s] him." *Patterson*, 487 U.S. at 293, 108 S.Ct. at 2395. In fact, the Court commented that "there is little more [the accused] could have possibly been told in an effort to satisfy this portion of the waiver inquiry." 487 U.S. at 293, 108 S.Ct. at 2395. Second, "the *Miranda* warnings also served to make [the accused] aware of the consequences of a decision by him to waive his Sixth Amendment rights during postindictment questioning" by informing him "that any statement that he made could be used against him in subsequent criminal proceedings." *Patterson*, 487 U.S. at 293, 108 S.Ct. at 2395. Finally, the Court noted that these warnings suffice to let the accused know what value an attorney would have to him: namely, to advise him not to make any inculpatory statements. *Patterson*, 487 U.S. at 294, 108 S.Ct. at 2396. The form used in this case reproduced in n. 3, compares favorably with the form described by the Court in *Patterson*, 487 U.S. at 288, n. 1, 108 S.Ct. at 2392, n. 1.

These warnings, the Court stated, inform the accused "of the possible consequences of going without counsel during questioning." *Patterson*, 487 U.S. at 294, 108 S.Ct. at 2396. Therefore, the Court concluded that "[a]s a general matter ... an accused who is admonished with the warnings prescribed by this Court in *Miranda* ... has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Patterson*, 487 U.S. at 296, 108 S.Ct. at 2396–97 (citation and footnote omitted).

Viewing this case in the light of these opinions it is evident that Muca voluntarily and intelligently waived his right to counsel. He was apprehended in Mexico and was then transported under guard to the United States where he was remanded to the custody of federal agents at which time he was told that he was under arrest for violating the drug laws of the United States. He was repeatedly advised of his *Miranda* rights, as outlined above, and he voluntarily agreed to waive those rights and answer the agent's questions without counsel present.

In light of the foregoing, we hold that because Muca executed a knowing and intelligent *Miranda* waiver, he validly waived his Sixth Amendment right to counsel and the inculpatory statements he made were properly admitted at his trial despite the fact that he was not specifically informed of his indictment.

Accordingly, the judgment of conviction is

AFFIRMED.[4]

MURNAGHAN, Circuit Judge, concurring:

Because Muca appreciated the gravity of the situation, I concur, concluding that, in this case, Fifth Amendment *Miranda* post-indictment warnings were sufficient to constitute the basis for a Sixth Amendment waiver of counsel. *See, e.g., Patterson v. Illinois*, 487 U.S. 285, 294, 108 S.Ct. 2389, 2396, 101 L.Ed.2d 261 (1988) (concluding that, where the defendant was aware of the "gravity of [his] situation," *Miranda* warnings provided sufficient information to render him competent to waive the Sixth Amendment right to counsel); *Riddick v. Edmiston*, 894 F.2d 586, 591 (3d Cir.1990) (finding that the defendant "was plainly aware of the gravity of his situation" and thus a knowing Sixth Amendment waiver had been made); *Norman v. Ducharme*, 871 F.2d 1483, 1487 (9th Cir.1989) ("[T]he display of the warrant was sufficient to apprise a lay person ... of the nature of the crime for which he was arrested and the gravity of the situation."), *cert. denied*, — U.S. ——, 110 S.Ct. 1483, 108 L.Ed.2d 619 (1990). *Cf. McNeil v. Wisconsin*, — U.S. ——, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991) (stating that the Fifth Amendment right to counsel "is in one respect narrower than the interest protected by the Sixth Amendment guarantee (because it relates only to custodial interrogation) and in another respect broader (because it relates to interrogation regarding *any* suspected crime and attaches whether or not the 'adversarial relationship' produced by a pending prosecution has yet arisen).").

I would leave to another day whether a *Miranda* warning in all cases operates, under the Sixth Amendment, as a waiver of counsel.

---

**4.** Only recently the case of *McNeil v. Wisconsin*, — U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), has been decided concerning a Sixth Amendment right to counsel and a *Miranda* right to counsel. The decision in that case, on dissimilar facts than those present here, is not inconsistent with our decision and, if anything, supports it.