**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 95-5950

VASHON ALVIN GRAVES,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 95-5951

JASON DORIAN JONES,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, District Judge.
(CR-95-94-BR)

Argued: December 6, 1996

Decided: February 24, 1997

Before HALL, ERVIN, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Rudolph Alexander Ashton, III, SUMRELL, SUGG,
CARMICHAEL & ASHTON, New Bern, North Carolina, for Appel-

lant Graves; Carl Lewis Tilghman, Beaufort, North Carolina, for Appellant Jones. J. Frank Bradsher, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jason Jones and Vashon Graves, who are half brothers, were charged with a three-count indictment: count one charged both with conspiracy to distribute and possess with the intent to distribute cocaine, see 21 U.S.C. § 846; count two charged both with distribution of cocaine and aiding and abetting, see 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and count three charged both with possession with intent to distribute cocaine and aiding and abetting, see 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Jones pled guilty to count three but pled not guilty to counts one and two. Graves pled not guilty to all three counts. They were tried jointly. The jury found Jones guilty on count one but not guilty on count two. It found Graves guilty on count one but not guilty on counts two and three. The district court sentenced Jones to 235 months' imprisonment and Graves to 121 months. Jones and Graves appeal their convictions and sentences. Finding no error, we affirm.

I.

On May 10, 1995, Detective Kennon of the Raleigh, North Carolina, police department (acting on a tip) followed Andre Sorrell to Gold's Gym in the Holly Park Shopping Center in Raleigh. Within 25 to 30 minutes Jason Jones and Vashon Graves arrived outside the gym in a Chevrolet Blazer. Graves was driving. While Jones waited in the Blazer, Graves entered the gym and came out with Sorrell.

2

Graves returned to the Blazer and waited while Jones and Sorrell met briefly in Sorrell's Jeep. When Jones and Sorrell finished their meeting, Jones and Graves left the shopping center and Sorrell returned to the gym.

Detective Kennon continued the surveillance of Sorrell. Kennon knew that Sorrell was driving on a revoked license, so when Sorrell left the gym Kennon ordered a marked police car to stop him. When Sorrell was stopped and searched, approximately 500 grams of crack cocaine were found in his underwear. Sorrell then agreed to help the police.

Later the same evening, at Detective Kennon's direction, Sorrell called Jones and arranged to buy more cocaine. Sorrell told Jones that he had already sold the half kilo of cocaine and wanted to buy another half kilo. Jones agreed to another transaction and arranged to meet Sorrell at a nearby Red Roof Inn. Officers took Sorrell and his Jeep to the meeting place and set up surveillance. Sorrell then paged Jones, and within minutes Jones arrived in the same Chevrolet Blazer the officers had observed earlier in the day. Again, Graves was driving. Jones was arrested as he approached Sorrell's Jeep. Officers moved to arrest Graves, who remained in the Blazer. As one officer approached the Blazer, he saw Graves lean over to the passenger side floor board. The officers arrested Graves and searched the Blazer where they found 428.5 grams of crack cocaine inside a brown paper bag on the passenger side floor board. Jones's fingerprints were on the paper bag.

Detective Kennon testified that Jones chose to waive his rights and talk to the police. Based upon Jones's statements and consent, the police searched his house trailer and his girlfriend's apartment. The search produced two loaded handguns, $318 in cash, and plastic bags like those used to package the crack cocaine seized at the Red Roof Inn. The fruits of the search were introduced at trial.

II.

Jones argues that because of a <u>Miranda</u> violation the district court erred in denying his pre-trial motion to suppress (1) his post-arrest statements to officers and (2) the firearms, cash, and plastic bags

seized as a result of those statements. At the suppression hearing Jones's account of his interrogation was entirely different from Detective Kennon's. Jones testified that he was not advised of his Miranda rights and that he asked for a lawyer. Detective Kennon testified as follows. Before he questioned Jones, he informed Jones of his rights by reading a standard police form. After each right was read, Kennon asked Jones whether he understood. Jones responded each time with a nod or "uh-huh." After Kennon finished reading the form, he asked Jones to sign the form and told him that his signature would constitute a waiver of rights. Jones refused to sign. However, Jones immediately began asking Detective Kennon questions about his (Jones's) brother. Kennon responded to Jones's questions with several questions of his own. As a result, Jones indicated to Kennon that he had two residences, his trailer and his girlfriend's apartment. Jones consented to a search of each residence. Although Jones maintains that he asked for a lawyer, he admitted on cross-examination that when the officers allowed him to make a telephone call he did not call a lawyer.

The district court determined that Detective Kennon's testimony was more credible and made the following findings: that Jones had been advised of his Miranda rights, that Jones refused to sign the waiver form, and that after being informed of his rights Jones engaged in a conversation with Kennon that ultimately led to searches, with Jones's consent, of his trailer and his girlfriend's apartment. We are satisfied that these findings were not clearly erroneous. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992).

Jones claims that the lack of a written waiver casts doubt on the district court's waiver determination. In North Carolina v. Butler, 441 U.S. 369 (1979), the Supreme Court noted that a written waiver of the right to remain silent or to counsel is strong proof of the validity of that waiver. Id. at 373. However, the Court also noted that a valid waiver can be established without a writing. "The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case." Id. In this case Jones was fully advised of his rights, acknowledged those rights, and then proceeded to ask and answer questions about his case. We have held that "a defendant's `subsequent willingness to answer questions after acknowledging [his] Miranda rights is sufficient to constitute an implied waiver.'" United States v. Frankson, 83 F.3d 79, 82

4

(4th Cir. 1996) (quoting United States v. Velasquez, 626 F.2d 314, 320 (3d Cir. 1980)); United States v. Hines, 605 F.2d 132, 134 (4th Cir. 1979). Therefore, we conclude that the district court correctly denied Jones's motion to suppress and properly admitted his statements and the evidence found as a consequence of those statements.

Jones argues that even if we find there was no Miranda violation, we should still reverse his conviction because the district court erred when it denied his separate motion to exclude evidence of the firearms seized at his trailer and at his girlfriend's apartment. He argues that the firearms were not relevant or, in the alternative, that their prejudicial effect outweighed their probative value. This argument is without merit. Evidence of firearms possession is relevant in narcotics conspiracy cases. United States v. Ricks, 882 F.2d 885, 892 (4th Cir. 1989); United States v. Collazo, 732 F.2d 1200, 1206 (4th Cir. 1984). Here the guns were an important part of the government's conspiracy case. For example, the officers found one of the loaded guns at Jones's trailer under his pillow in the bedroom where Jones testified he had stored cocaine. Additionally, Jones called Sorrell from his trailer and from his girlfriend's apartment to arrange the details of the drug deal at the Red Roof Inn. The district court did not abuse its discretion in ruling that the firearms evidence was relevant. Nor are we persuaded that the firearms evidence unfairly prejudiced Jones. We do not believe that it diverted the jury from open-minded consideration of the case.

Jones also contends that the district court abused its discretion by admitting prejudicial "other crimes" evidence. During the trial Sorrell described drug deals that transpired before the charged conspiracy. Because this testimony described activities that fell outside the charged conspiracy period, Jones asserts that the testimony should have been excluded under Federal Rule of Evidence 404(b) as evidence of "other crimes, wrongs, or acts."

Rule 404(b) excludes evidence of prior bad acts offered "to prove the character of a person in order to show action in conformity therewith." The challenged testimony from Sorrell was not offered for that purpose. The evidence of prior dealings between Sorrell and Jones was evidence of uncharged conduct that arose out of the same course of dealing as the charged offense. We noted in United States v.

5

Kennedy, 32 F.3d 876 (4th Cir. 1994), that evidence of activities "occurring before the charged time frame of the conspiracy does not transform the evidence into `other crime' evidence." Id. at 885. Evidence of prior dealings may be admissible to put the drug distribution scheme in context or to complete the story of the crime charged. Id. at 885-86.

Jones was charged with conspiring to distribute cocaine from December 1994 to May 1995. The other dealings Sorrell described occurred in 1992, 1993 and the spring of 1994. Over an eight-month period between 1992 and 1993, Sorrell said he bought seven to fourteen grams of cocaine from Jones every "week to a week and-a-half." Sorrell testified that he then lost track of Jones. In early 1994 when Sorrell reestablished contact with Jones, Sorrell asked Jones if he was still selling cocaine. Jones responded that he was not. Sorrell told Jones to let him know if he (Jones) started selling again. A few months later Sorrell said he saw Jones again, and Jones told him he was "back on." From that point until they were arrested, Jones sold cocaine to Sorrell. Thus, Sorrell's testimony about prior dealings did not constitute prohibited testimony about prior bad acts. Instead, the testimony simply allowed the jury to understand the background of the case and the extent of the relationship and dealings between Sorrell and Jones.

We therefore reject each of the foregoing challenges to Jones's conviction.

III.

Graves first attacks his conviction by contending that the district court should not have instructed the jury on willful blindness. "The willful blindness instruction allows the jury to impute the element of knowledge to the defendant if the evidence indicates that he purposely closed his eyes to avoid knowing what was taking place around him." United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991). Graves argues that there was no direct evidence of "willful blindness" and therefore the instruction was improper.

Graves testified that on May 10, 1995, he was simply visiting Jones, his half-brother, and was driving him around because Jones's

6

license had been revoked. Graves said he had no involvement in or knowledge about the drug deals between Sorrell and Jones. However, the government offered testimony from Sorrell, who said that Graves had been present on several other occasions when Jones and Sorrell met and discussed money or drugs. On at least one of those occasions, Sorrell said he gave Jones some money and Jones indicated that he and Graves would be getting more drugs. In light of Sorrell's testimony, Graves's contention that he did not know about the drug deals made it appropriate for the district court to give the willful blindness instruction.

Graves also contends that there was insufficient evidence to support the jury's verdict convicting him of conspiracy to possess and distribute cocaine. In the alternative, Graves argues that even if there was sufficient evidence, the jury's verdict was inconsistent and should therefore be reversed. "`To sustain [a] conspiracy conviction, there need only be a showing that the defendant knew of the conspiracy's purpose and some action indicating his participation.'" United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992) (quoting United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984)). On the day (May 10) when Graves and Jones were arrested, Graves fetched Sorrell from the gym. Later that day, when the police surrounded the Chevrolet Blazer at the Red Roof Inn, Graves reached for the paper bag that contained the cocaine. On several other occasions when drugs were discussed or money was exchanged, Graves accompanied Jones. Once, when Sorrell delivered money to Jones, Jones said he and Graves would be getting more drugs. We are satisfied that the evidence was sufficient to link Graves with his half brother, Jones, in a conspiracy to sell drugs.

The jury found Graves guilty on the conspiracy count but not guilty on the distribution and possession counts. Graves contends that the jury's verdict was inconsistent because absent the distribution and possession evidence, there was no other evidence linking Graves to a conspiracy between Sorrell and Jones. However, even assuming the jury's verdict was inconsistent, "[a]n inconsistent verdict in a multi-count indictment is not grounds for reversal." United States v. Blankenship, 707 F.2d 807, 810 (4th Cir. 1983); see also United States v. Tinsley, 800 F.2d 448, 450-552 (4th Cir. 1986).

7

Accordingly, each of these challenges to Graves's conviction is without merit.

IV.

The objections that Jones and Graves raise about their sentences must also be rejected.

Both contend that the district court erroneously attributed to them drug quantities from counts for which they were found not guilty. We have held that "[i]t is well settled that acquitted conduct may properly be used to enhance a sentence once a requisite finding is made by the sentencing judge." United States v. Romulus , 949 F.2d 713, 716 (4th Cir. 1991). This holding was recently ratified by the Supreme Court. In United States v. Watts, 117 S. Ct. 633, 638 (1997), the Court held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." Here, the district court determined by a preponderance of the evidence that the drugs in Jones's count of acquittal were attributable to him and that the drugs in Graves's two counts of acquittal were likewise attributable to him. There is no error in this determination.

Jones also contends that the district court erred when it enhanced his offense level by two for firearm possession. See U.S.S.G. § 2D1.1(b)(1). The pre-sentence report recommended a two-level enhancement because agents seized a loaded handgun from underneath Jones's pillow. The district court adopted the factual findings and the recommended guideline applications in the pre-sentence report. The district court did not err. Application Note 3 to § 2D1.1(b)(1) states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." We cannot say that it was clearly improbable that the weapon was connected with the offense. Jones testified that he had stored cocaine in the same bedroom where the officers found the loaded gun. Additionally, Jones called Sorrell from his trailer and discussed the drug deal at the Red Roof Inn. Thus, the evidence provided sufficient support for the district court's decision to enhance Jones's offense level pursuant to U.S.S.G. § 2D1.1(b)(1).

8

The district court decreased Jones's offense level by two for acceptance of responsibility. See § 3E1.1(a). Jones contends that the district court erred when it refused to give him a further reduction pursuant to U.S.S.G. § 3E1.1(b)(2) for notifying the authorities of his intention to enter a plea of guilty as to count three. We said in United States v. Gordon, 895 F.2d 932 (4th Cir. 1990), that"in order for § 3E1.1 of the guidelines to apply, a defendant must first accept responsibility for all of his criminal conduct." 895 F.2d at 936 (emphasis added). Jones failed to accept responsibility for all of his criminal conduct. He pled guilty to one count, but he was found guilty on an additional count.*

V.

The convictions and sentences of both Jones and Graves are affirmed.

AFFIRMED

_____

*We have reviewed the other claims asserted by Jones and Graves and find them to be without merit.

9