**Jesse Arthur CLIFTON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21400.**

United States Court of Appeals
Fifth Circuit.

Feb. 15, 1965.

Rehearing Denied March 16, 1965.

Robert M. Hitch, III, Savannah, Ga., for appellant.

Fred S. Clark, Asst. U. S. Atty., Savannah, Ga., J. Edward Shillingburg, Dept. of Justice, Washington, D. C., Donald H. Fraser, U. S. Atty., Savannah, Ga., for appellee.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

The appellant in this case was convicted upon his plea of not guilty to an indictment which charged him with transporting a stolen vehicle in interstate commerce, knowing the vehicle to have been stolen, a violation of 18 U.S. C.A. § 2312.

The evidence introduced at the trial indicated that appellant had borrowed the automobile in question from a friend named French in Florida on November 13, 1963, and that he had used French's car on previous occasions. French testified that on the occasion in question appellant wished to use the car to look for work in the nearby town of Eustis and that French expected the car to be returned in about two hours. According to French, no time had been specified for

return of the car. The testimony clearly established that appellant did not return the automobile to French on that day, but kept it and drove it into Georgia, where he was apprehended by the Highway Patrol on November 15, 1963. Prior to his taking the car into Georgia, appellant had sold the hubcaps and spare tire.

Appellant maintained that French had placed no conditions on the use of the car other than to warn him not to go into the town of Leesburg and that he had not understood that he was to return the car that same day. In the alternative, appellant took the position that he had not considered that he was committing an act of theft when he kept the car longer than he understood was proper under the terms of the parol agreement with French, since he had kept French's car on previous occasions and no action had been taken.[1]

Appellant argues that certain incriminating statements that he made to FBI agents were improperly admitted into evidence under the fifth and sixth amendments. He also asserts that he was prejudiced by certain instructions given by the trial court in submitting the case to the jury. In particular, he complains of the court's statement: "There is no dispute, I don't think, as to the car being stolen, and that he didn't carry it back to the owner. * * *"[2] The court also stated in its charge: "[I]f you find that he went and took this car under an agreement with the owner that he was to go to this small place, Eustis, I think it was, but you all will remember where it was, and to bring the car back to him,

and instead of so doing he brought the car away from that section over into Georgia, why, of course, he is guilty." Furthermore, in discussing the admissibility of certain incriminating statements made by Clifton to FBI agents, the court said:

"I think the evidence disclosed in this case that the two FBI Agents testified that they told him that it had to be voluntary and asked him if he wanted a lawyer, and they went through the regular formula of finding if he was willing to enter a plea of guilty and he did say that he wanted to plead guilty and did sign that confession, if he did that, why of course he is guilty. * * * *"

The evidence is not conclusive on the questions of whether appellant had formed an intent to deprive French of the use of his car prior to its transportation into Georgia and whether he understood that French expected it to be returned the same day that appellant borrowed it. Therefore, it was incumbent on the trial judge to frame his instructions on those issues with great care. Indeed, the question of intent always becomes crucial whenever, as here, the defendant obtains possession of the vehicle lawfully and his intent to convert it is formed later. Although an examination of the entire charge reveals that the trial judge intended to submit these issues to the jury, the above excerpts are so worded that they tend to confuse and mislead. This is particularly true of the statement that the car was "stolen," and a correct statement of the issue in an-

---

1. French testified as follows:
"Q. What the longest length of time that he had borrowed it on past occasions?
"A. Four or five hours.
"Q. Four or five hours?
"A. Yes, sir, or a day.
"Q. All right, let me ask you this: Mr. French, you and Clifton were good friends at one time, were you not?
"A. Yes, sir."

2. The context of that charge was as follows:

"Now, after all is daid [sic] and done it is a question of fact for you to determine. There is no dispute about the law, as I understand it. There is no dispute, I don't think, as to the car being stolen, and that he didn't carry it back to the owner, but his defense was that he didn't understand that he was to carry it back, that he could have it, but I don't think evidence disclosed as to how long he could keep it, but instead of returning it the Government charges that he took that car and carried it up into Georgia, and that is the issue that you are to determine."

other part of the charge did not cure the prejudice. The reference to appellant's having "wanted to plead guilty" is likewise a manifest error. Although appellant's counsel interposed no formal objection to most of these statements,[3] we think the charges constitute "plain error" and justify invocation of Fed.R.Crim.P. 52(b). We conclude that the judgment of conviction must be reversed so that appellant can be tried under properly drawn instructions.

Appellant also presents, as an alternative ground for reversal, the theory that the trial court erred in admitting an incriminating statement which he made and signed in the presence of two FBI agents on February 3, 1964, approximately one week before an indictment was returned against him. There is evidence that the statement was voluntarily made, but the appellant asserts that it is nevertheless inadmissible under the logic of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), since it was obtained in the absence of his counsel.

In view of our conclusion with respect to the propriety of the court's instructions, we could avoid a consideration of the other questions raised. It is obvious, however, that the issue of the admissibility of the incriminating statement mentioned above will inevitably arise on a retrial of this case. Since important constitutional considerations are involved in its resolution, we deem it appropriate on this appeal to deal with that question.[4]

Appellant argues that the doctrine enunciated in the Massiah case renders inadmissible all confessions obtained in the absence of counsel once the right to counsel has attached. In Massiah, the Supreme Court held inadmissible an incriminating statement which was obtained surreptitiously after indictment on the ground that its extraction constituted a denial of the right to counsel. The Government would distinguish Massiah from the instant case, since the interrogation in that case took place after indictment. However, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), makes it clear that similar rules may apply to interrogations in the absence of counsel before an indictment is returned or a formal arrest made.[5] The test the court set up in that case for determining when an accused has the right to consult with his retained counsel is a functional one— "when the process shifts from investigatory to accusatory." 84 S.Ct. at 1766, 12 L.Ed.2d at 987. While Massiah and Escobedo are both factually distinguishable from the instant case, we believe that the rationale of those opinions requires that we hold the confession of February 3, 1964, inadmissible.

In the instant case, the record reveals that Clifton's statement was made to two FBI agents in the following circumstances. Clifton, who was then only 19 years old, was arrested on a state traffic violation on November 15, 1963, in Long County, Georgia. He was taken before a committing magistrate in Brunswick on November 18 for a preliminary hearing on the Dyer Act charge, and shortly thereafter he was transported to the Chatham County jail in Savannah

3. At the close of the judge's charge, appellant's counsel said: "One exception, Your Honor, In your charge to the jury, he didn't plead guilty, did he?"

4. The importance of the statement during the trial of the case is emphasized by the fact that the prosecuting attorney referred to it directly in his opening statement to the jury:

"* * * We also have a statement which he made to the FBI that he borrowed it and that he realized that he should have taken it back before but that he just kept it because it was a hot car."

5. "It would exalt form over substance to make the right to counsel, under these circumstances, depend on whether at the time of the interrogation, the authorities had secured a formal indictment. Petitioner had, for all practical purposes, already been charged with murder." Escobedo v. State of Illinois, 84 S.Ct. 1758, 1762, 12 L.Ed. 977, 983 (1964).

where he was incarcerated. Since Clifton was unable to post bond, he remained in jail until the time of his trial in March, 1964. At the time he made the statement in question, he had been incarcerated for well over two months.[6] Counsel was appointed to defend Clifton in early December 1963, and as shown by the record he visited the appellant in the Chatham County jail on numerous occasions[7] and had previously cautioned Clifton not to make any statement to federal officers in his absence.

There is scarcely any doubt about the fact that the officials at the jail knew that Clifton had counsel and perhaps knew his name and address. It is obvious that other persons connected with the prosecution possessed this information, and doubtless the court records revealed the identity of counsel. It would not have been burdensome for the investigating officers to have ascertained the facts.

Clifton testified without contradiction that in the period prior to making the statement, he had repeatedly requested persons at the jail to telephone counsel, and they neglected to do so. It is clear that Clifton had voluntarily requested the federal agents to come see him, but apparently he did not disclose that he wished to make a confession at that time. On February 3, he was interviewed in a small interrogation room near his cell. When he was being removed from his cell to be taken to the interview room, he "asked the Captain * * * to please call [his] lawyer," indicating again his desire to have counsel present during the interrogation. The agent testified that he advised Clifton "of his rights" at the

outset of the interview, but Clifton asserted that no mention was made of his attorney or his right to have one present. Clifton apparently did not request the interviewing agents to call his attorney. It is nonetheless undisputed that the FBI agents made no attempt to determine whether Clifton had an attorney

Escobedo and Massiah represent a broad indorsement by the Supreme Court of the right to have counsel present during an interrogation once the investigation has begun to focus on a particular suspect. Here this was clearly the case, for appellant had been confined to a cell for nearly three months awaiting the action of the grand jury. Hence, any interview would have been directed only to obtaining evidence to be used in prosecuting the appellant, not in ascertaining whether or not there was probable cause to believe a crime had been committed.[8] We think the interview of February 3 was a time when legal advice was critical to appellant, particularly when his age and inexperience are taken into account. In the circumstances of this case, a duty devolved upon the interviewing agents to make a reasonable effort to ascertain whether appellant had counsel and to determine whether he desired that counsel be present at the interview. It seems clear that in the instant case a reasonable inquiry would have disclosed that appellant had an attorney and that he was readily available if appellant had desired that he be present. The burden of making such an inquiry is not unreasonable where, as here, the defendant is young and obviously unschooled in the intricacies of the law and where he had been incarcerated for over two months, unable to contact his attorney at will.[9]

---

6. Clifton testified that he had been confined in a solitary cell for the month immediately preceding his interrogation.

7. According to an affidavit filed on this appeal by appellant's counsel, his name appeared on the Visiting Attorney's Ledger in the Chatham County jail approximately thirty times.

8. See Lee v. United States (5 Cir. 1963) 322 F.2d 770, 776.

9. Although we do not assume in this opinion that FBI agents are lawyers, we think that once the process has shifted from investigation to accusation the well-recognized practice in civil litigation serves as an appropriate analogy:
   "16. COMMUNICATIONS WITH OPPOSITE PARTY.
   A lawyer should not in any way communicate upon the subject of controversy with a party represented by

[2]   While we hold that interrogating officers must make some reasonable attempt to ascertain whether such an accused has an attorney and desires that he be present, we do not reach the question of admissibility where the accused has clearly and unequivocally waived the right to consult his attorney [10] or where the accused has no attorney and has requested none after being clearly advised of his rights.[11]   The record in this case discloses that the interviewing officers should have known that the accused was represented by counsel, and that they made no reasonable effort to ascertain whether he desired to consult with his attorney.   In the particular circumstances of this case, their failure in the above respect constitutes a denial of the guaranties of the sixth amendment. Hence, any incriminating statement made at the interview cannot be admitted into evidence at his trial.

  The appellant also challenges the admissibility of an incriminating statement made to FBI Agent Baughl during an interview at the Long County jail on November 16, 1963.   Appellant's counsel did not object to the admission of this statement at trial, but he now charges that it was obtained during a period of illegal detention and is therefore inadmissible under Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).   While the record does indicate that appellant was not brought before the U. S. Commissioner at Brunswick until November 18, 1963, approximately 72 hours after his arrest, the transcript does not disclose how soon after arrest the appellant was interrogated, whether a committing magistrate was readily available, and whether appellant was still being properly detained on the state traffic charge for which he had originally been apprehended.   Hence, we feel we should pretermit the question of the admissibility of this earlier statement under the McNabb-Mallory [McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819] doctrine at this time.   Resolution of this question should depend on the development of a proper record in the district court.

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel, except in cases where opposing counsel has expressly consented to such communications or negotiations. * * * "

American College of Trial Lawyers, Code of Trial Conduct, Canon 16.   See also American Bar Association, Canons of Professional Ethics, Canon 9.

10. While the paper that Clifton signed contained the statement, "I realise [sic] * * * that I have a right to an attorney," this cannot be deemed a clear and unmistakable waiver in light of appellant's age, experience, and circumstances here evident.   See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1465 (1938).

11. For a recent case in point, see Jackson v. United States (D.C.Cir.1964) 337 F.2d 136.