UNITED STATES of America,
Plaintiff-Appellee,

v.

Harry Joseph MARTIN, Defendant-Appellant.

No. 28890.

United States Court of Appeals,
Fifth Circuit.

Nov. 13, 1970.

John S. Tucker, Jr., Birmingham, Ala. (Court-appointed), for defendant-appellant.

Wayman G. Sherrer, U. S. Atty., Melton L. Alexander, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before RIVES, WISDOM and GODBOLD, Circuit Judges.

RIVES, Circuit Judge:

Martin appeals from his conviction for violating 18 U.S.C. § 2312 [1] and sentence to three years' imprisonment.

About 8:30 A.M., April 4, 1969, an Alabama State Trooper patrolling a highway near Bessemer, Alabama, noticed a 1964 Chevrolet parked on a small dirt road off the pavement. He continued patrolling, but came back about 9:00 A.M., went to the car, noticed a man sleeping in the back, got the tag number, called his headquarters by radio and was informed that the tag was registered to a 1956 Ford. The trooper then awoke Martin by tapping on the window of the car. Martin stepped out of the automobile leaving the door open. The trooper testified that before he wrote down the serial number of the car or had any conversation with Martin, he advised him of his constitutional rights. [2] Martin responded that he understood but would talk without the presence of a lawyer. The trooper told Martin that the license tag was registered to another car, and Martin admitted that he had stolen the car in Chicago. The trooper testified that he then placed Martin under arrest, that Martin said "I don't want to discuss it any further," and that was the end of the interview.

The trooper carried Martin to the Highway Patrol Building on the Bessemer Highway, briefed a Lieutenant of the State Department of Public Safety on what had transpired to that point and left Martin in his custody. The Lieutenant testified that Martin was brought in at about 10:10 A.M., that before any conversation he advised him of his constitutional rights. [3] Upon questioning, Martin then related to the Lieutenant his

---

1. "§ 2312.  *Transportation of stolen vehicles*

"Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,-000 or imprisoned not more than five years, or both."

2. "I told him he had the right to remain silent and he didn't have to answer any questions at all; and if he chose to answer questions, he had a right to have a lawyer with him; and if he did not have enough money to pay a lawyer, there would be one appointed for him; and at any time during the questioning he could decided [sic] he wanted a lawyer if he did not specifically want one at that time.

"I also told him anything he might say could be held against him in Court." (Tr. p. 45.)

3. "I first informed him who I was, and that I was interested in him in connection with a reported stolen automobile which I had been called in to give assistance to the Trooper on.

"I advised him that he did not have to make a statement to me. I advised him that if he made a statement to me it could and/or would be used in Court against him. I advised him if he decided to make a statement he had the right to have an attorney present; that if at any time during the questioning he decided to cease answering or requested that questions be stopped that request would be honored; and that if he had no finances to employ an attorney, that one would be provided for him." (Tr. p. 78).

name and address, and that he had told the trooper that he took the car in Chicago.

At the time of his arrest, Martin was bleary-eyed and smelled of alcohol. He testified that he was in a dazed condition from having been on a drinking spree, but the officers who talked to him testified that he appeared coherent and responded to their questions intelligently.

The owner of a vehicle stolen in Chicago early on the morning prior to Martin's arrest testified at the trial. His description of the car matched that provided by the FBI agent who investigated the theft. The vehicle identification number which the agent found on the vehicle in which Martin was sleeping was the same number provided by the owner from the title to his vehicle.

The owner testified that his wife had been watching the late show on television, and waked him around one o'clock in the morning and said "somebody is stealing your car." The owner's wife did not testify at the trial. Martin sought to introduce in evidence what purported to be a Chicago police department stolen vehicle report. The report contained a description of the thief provided by the wife which was at considerable variance with Martin's appearance. The district court declined to admit the report in evidence.

On appeal, Martin urges that the district court erred in admitting the incriminatory statements made to the officers and in excluding the police report. He also urges that the court erred in its charge to the jury when the judge stated that he believed that the parties had agreed that the vehicle was stolen.

### I.

Martin contends that the court committed error by admitting into evidence admissions made by him to the arresting officer and an hour later to another officer.

The warnings given Martin by the officers [4] meet the *Miranda* test.[5] It must, however, be determined whether Martin was intoxicated to the extent that he could not intelligently understand the warnings and could not intelligently and knowingly waive his right not to talk.

> "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case * * *."

Johnson v. Zerbst, 1937, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461.

The arresting officer testified that "There was an odor of alcoholic beverage" on Martin's breath [Tr. 51], that "he was under the influence" [Tr. 52], and indicated that a person driving a car in Martin's condition could be arrested for drunken driving [Tr. 53]. He also testified that Martin talked "reasonably intelligent" [Tr. 51], that he had no difficulty understanding what Martin said [Tr. 70], and that Martin "seemed to know what he was doing" [Tr. 71].

The second admission came when Martin confirmed to the Lieutenant that he had told the arresting officer of the theft. This conversation took place a little over an hour after the arrest. The Lieutenant's testimony was that Martin appeared "droopy-eyed" [Tr. 83], that his eyes were "red streaked" [Tr. 92] and that he could smell alcoholic beverages on him [Tr. 83]. But the Lieutenant also testified that Martin was not incoherent in his talk [Tr. 83], that he responded to questions intelligently [Tr. 90], and that he did not appear to be intoxicated [Tr. 84].

---

4. See footnotes 2 and 3, *supra*.

5. Miranda v. Arizona, 1966, 384 U.S. 436, 444, 479, 86 S.Ct. 1602, 16 L.Ed. 2d 694.

Martin testified that he had been drinking heavily for several days. The night before his arrest he had drunk at a tavern until closing time at midnight, and continued drinking past 1:00 A.M. of the day of his arrest. He was arrested something less than 8 hours after he last recalled drinking. He testified that when the trooper waked him he was dazed and did not know what was going on [Tr. 140–145].

2 Wharton's Criminal Evidence (12th ed.), p. 122, § 388 contains the following discussion of intoxication as affecting a confession:

"A confession otherwise voluntary is not to be excluded because the accused was intoxicated when he made it. The fact that the confesser was intoxicated is a circumstance affecting its credibility, and is to be considered by the jury.

\* \* \* \* \* \*

"If the intoxication of the confesser produced actual mania, or rendered the confesser unconscious of what he was saying, his confession is inadmissible. However, the fact that the accused had but recently recovered from delirium tremens will not render a confession inadmissible." (Footnotes omitted.)

The 1970 Cumulative Supplement to this section cites later holdings to the following effect:

"The fact that the defendant was intoxicated when he confessed is immaterial if he had sufficient mental capacity at the time to know what he was saying and to have voluntarily intended it. [Citing State v. Smith (Mo.), 342 S.W.2d 940; People v. Schompert, 19 N.Y.2d 300, 279 N.Y.S. 2d 515, 226 N.E.2d 305, cert. den. 389 U.S. 874, 88 S.Ct. 164, 19 L.Ed.2d 157]."

"The extent to which the defendant is intoxicated or has a hangover does not make his confession inadmissible but goes only to its weight. [Citing People v. Clouse, 222 Cal.App.2d 562, 35 Cal.Rptr. 272.]"

A recent case which held that the accused was too intoxicated to waive his rights is Logner v. North Carolina, M.D. N.C. 1966, 260 F.Supp. 970. In that case the evidence showed that the accused had a history of drinking and drug use. He was observed walking unsteadily by two police officers. When he got into his car they followed him and he had an accident several blocks away. He was so drunk that he was unable to put his car in reverse and could not make a statement about the accident. After he was arrested and advised of his rights, the accused stated, "I can tell you anything. You still have to prove it." He went on to implicate himself in two robberies. The district court said:

"A confession made by one in the petitioner's state of intoxication could not be the product of a rational intellect and a free will. Indeed, it is a paradox that the petitioner could not make a statement concerning the accident because he was too drunk, yet he was capable of making statements that put him in prison."

260 F.Supp. 970, 976.

In Bell v. United States, 1931, 60 App. D.C. 76, 77, 47 F.2d 438, 439, the appellant had been convicted of murder after the trial court had admitted into evidence a confession made while intoxicated.

"[I]t was testified by the police officers that when he made the confession to them he was 'partially under the influence of intoxicating liquor,' that is, 'you could detect the odor of liquor on his breath' and 'his speech was sort of thick,' but that while 'he showed indications of having been drinking \* \* \* he had his mental faculties and knew what he was about'; and that he 'was not drunk, but showed plainly he had been drinking.' One of the police officers was asked, 'In your opinion, if he had been operating an automobile would he have been under the influence of liquor to such an extent that you would have arrested him?' to which he answered, 'If my

attention was brought directly to the man it may be possible he would be arrested for operating an automobile while drunk.' "

The court held that "The evidence fails to disclose such an extreme case of intoxication as to render the confession inadmissible."

■ The evidence in the instant case indicates that, while Martin had been drinking and was affected by alcohol to some degree, his faculties were not so impaired that he did not understand what was going on nor was he incoherent. We conclude that the district court did not err in finding that Martin had intelligently and knowingly waived his right not to talk to the officers and in admitting in evidence the admissions which Martin had made.[6]

■ Martin further contends that the jury should have been instructed that the effect of alcohol goes to the weight and credibility of admissions, even though such instruction was not requested. The district court did not specifically mention alcohol when instructing on the credibility of the admissions. Nonetheless, its instructions [7] adequately covered that aspect.

## II.

■ Police reports are "business records" for purposes of admission into evidence under the Business Records Act, 28 U.S.C. § 1732.[8] To be admissible, however, the report must have been made in the regular course of business and the person who offers the report must be in a position to attest to its authenticity. Bridger v. Union Railway Co., note 7 *supra.*

■ An FBI agent testified that he had never worked for or with the Chicago police department and could not verify that the document offered was made in the regular course of the department's business. While he testified that he obtained the purported report from the FBI in Chicago, the FBI did not make the report nor could this agent testify to the source from which the FBI obtained it. The purported report was not authenticated, and was therefore properly excluded as hearsay.

## III.

■ Martin assigns error to the emphasized clause of the following excerpt from the district judge's instructions to the jury:

"If you find from the evidence beyond a reasonable doubt that the motor vehicle described in the indictment was stolen, *and I believe the parties have agreed on that fact * * *.*" [Tr. 129].

Martin's counsel had not stipulated that the car with which Martin was apprehended was stolen.[9] While no objection was made at trial to the charge or any part of it, Martin contends that the

6. We note that a like result was reached in the very recent case of United States v. Kershner, 5 Cir. 1970, 432 F.2d 1066.

7. "All evidence relating to any oral admission or any incriminatory statements claimed to have been made by a defendant outside of court, should be considered with caution and weighed with great care.

"The very nature of an admission made outside of court requires that the circumstances surrounding it be subjected to careful scrutiny in order to determine surely whether there was a voluntary and understandably made admission. If the evidence does not convince you beyond all reasonable doubt that an admission was made voluntarily and understandably, the jury should disregard it entirely." [Tr. 176.]

8. Yates v. Bair Transport, Inc., D.C.N.Y. 1965, 249 F.Supp. 681; Bridger v. Union Railway Co., 6 Cir. 1966, 355 F.2d 382.

9. However, in argument to the court outside the presence of the jury, Martin's counsel had said: "Now, the jury is entitled, I believe, and the Court will charge, that the jury is entitled to infer from the evidence, certainly there is no qeustion but that it is a stolen motor vehicle." [Tr. 115.]

emphasized part constitutes plain error [10] and requires reversal.

There was ample proof that the car was stolen. The Federal Bureau of Investigation agent who examined the car a short time after the arrest described it as a 1964 Chevrolet, two-door hardtop, dark blue in color [Tr. 98]. The owner of the car described his car, which had been stolen in Chicago 31 or 32 hours before Martin was arrested, as a 1964 Chevrolet Impala, hardtop, Super Sport, Daytona Blue in color [Tr. 8, 9]. The testimony of the owner provided the vehicle identification number from the automobile title. The agent testified as to the number he took off the car that Martin was found in, and these numbers were the same. The identification here is sufficient under the decisions in *Watkins* and *Thompson*.[11]

Further, the district court instructed the jury that it should consider the instructions as a whole and should not single out any one instruction as stating the law of the case [Tr. 170]: the court told the jury that it is not bound by any opinion the court might have expressed or intimated as to the facts [Tr. 171]; that the Government has the burden of proving the accused guilty beyond a reasonable doubt of every essential element of the crime charged [Tr. 172]. The court also stated prior to the phrase complained of:

"The word stolen as used in the statute and in the indictment in this case, means any wrongful or dishonest taking whereby a person obtains property belonging to another without and beyond any permission given and with the intent to deprive the owner or owners the benefit of ownership."

Viewed in its entirety, the charge to the jury does not constitute plain error.

Martin relies on Clifton v. United States, 5 Cir. 1965, 341 F.2d 649, to support his contention that a trial judge's indication that the parties had agreed that the vehicle was stolen in a Dyer Act prosecution removed one of the essential elements of the crime from the jury's consideration. In *Clifton*, there was an absence of objection at trial. The giving of the charge was one of several grounds for reversal. The accused in *Clifton* was a 19-year-old who had borrowed a car to drive to a nearby town. He instead drove to the next state. This Court held that the evidence was not conclusive as to the limitations which the owner placed on the defendant. The charge was a ground for reversal because there was serious doubt as to whether the defendant had understood the owner's instructions and whether he had formed the requisite intent to deprive the owner of the use of the vehicle.

The instant case does not present such a close question of intent. The only reasonable challenge to whether the automobile here was stolen or not must be aimed at whether the vehicle stolen in Chicago was the same one as that received by the state police at Bessemer, Alabama. The Government's evidence on this issue is most convincing.

Before closing, the Court wishes to thank John Tucker, Esq., court-appointed counsel, for his able representation of Martin both in the district court and on appeal.

We find no reversible error and the judgment is

Affirmed.

10. See Fed.R.Crim.P. 52(b).

11. Watkins v. United States, 5 Cir. 1969, 409 F.2d 1382, and Thompson v. United States, 5 Cir. 1964, 334 F.2d 207.