**Reginald Bernard TINSLEY,**
**Petitioner-Appellant,**

v.

**Tom PURVIS, Warden,**
**Respondent-Appellee.**

No. 83–7317.

United States Court of Appeals,
Eleventh Circuit.

May 7, 1984.

Donald Brutkiewicz, Jr., Mobile, Ala., for petitioner-appellant.

Helen P. Nelson, Asst. Atty. Gen., Montgomery, Ala., for State of Ala.

Before RONEY, FAY and CLARK, Circuit Judges.

FAY, Circuit Judge:

Reginald Bernard Tinsley appeals the decision of the United States District Court for the Southern District of Alabama denying him habeas corpus relief. Petitioner was convicted in the Mobile Circuit Court of second degree murder and was sentenced to twenty-five years imprisonment. His conviction was affirmed by the Alabama Court of Criminal Appeals and the Alabama Supreme Court denied *certiorari. Tinsley v. State*, 395 So.2d 1069 (Ala.Cr.App.), *cert. denied*, 395 So.2d 1080 (Ala.1981). On April 22, 1981, the district court denied a petition of habeas corpus. This court in November, 1982, vacated the district court's opinion and remanded the case for additional fact-finding. On remand, the district court again denied the petition and we affirm. The only issue in this appeal is whether petitioner was denied the sixth amendment right to counsel when he made an inculpatory statement without an attorney present.

On September 14, 1978, petitioner was indicted for murder. At his arraignment on September 22nd he was represented by court-appointed counsel, Mr. Chris Galanos. On September 27th petitioner met with two detectives in the jail. He was not represented by an attorney. After being informed of his right to counsel and right to remain silent, the petitioner orally waived these rights and signed a written waiver form. He then made an inculpatory statement that was used against him at trial.

■ Petitioner has never raised any fifth amendment objection to the introduction of this statement. His first argument in this court was that his waiver of counsel was inadequate because he had not been asked whether he had a lawyer and whether he wanted that lawyer present. A panel of our court remanded the case to the district court to determine if these questions had been asked. The magistrate found that they had not been asked but that this was not error under *United States v. Brown*, 569 F.2d 236 (5th Cir.1978) (*en banc*).[1] The *en banc* court clearly held that these two questions need not be included in the *Miranda* warnings. *Id.* at 239. The magistrate concluded that after *Brown* these two questions were irrelevant to the sixth amendment determination.

In *Brown*, the defendant had been arrested on state charges, released on bail and was in the state courthouse awaiting her preliminary hearing. A state public defender had been appointed to represent her at the earlier bond hearing. At the courthouse, F.B.I. agents intercepted her on the way to the courtroom and explained they wished to question her about the facts leading to the state charges. She was informed of her right to counsel, signed a written waiver, and made inculpatory statements without counsel present. At the time of the statement to F.B.I. agents no federal charges had been filed. In the

---

1. *En banc* decisions by the Fifth Circuit rendered before October 1, 1981 are binding precedent for this circuit unless overruled or modified by this court *en banc. Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

instant case, the statement was made while Tinsley was in jail. He had been indicted and arraigned. Appointed counsel had represented him at the arraignment. Despite these factual differences *Brown* should control the narrow issue of the sufficiency of the warnings. We agree with the magistrate that there is no constitutional error in the failure to ask the additional two questions about Tinsley's specific counsel.

Since originally raised in the trial court, the focus of petitioner's sixth amendment claim has changed somewhat. At trial, on direct appeal, and in the first habeas petition and appeal, the focus was on whether or not petitioner in fact had counsel at the time he confessed. Mr. Galanos was appointed to represent Tinsley and had represented him at the arraignment. Tinsley's family meanwhile was attempting to procure specific private counsel, Mr. Brutkiewicz. During this period after indictment and arraignment it was unclear which, if either, attorney was representing Tinsley. Tinsley and his family wanted Mr. Brutkiewicz to represent him. Mr. Brutkiewicz had represented him before. Tinsley's family frequently called Mr. Brutkiewicz after Tinsley's indictment to arrange for the representation. Mr. Brutkiewicz testified that he did not represent Tinsley at the arraignment because no fee arrangement had been reached. Sometime in mid-October Mr. Brutkiewicz undertook to represent Tinsley and filed a notice of appearance with the court. Mr. Brutkiewicz represented Tinsley at trial and, with the help of his son, still represents Tinsley in this appeal.

■ The state court found that on September 27th, the date Tinsley confessed, he was not represented by counsel. 395 So.2d at 1074. This finding is entitled to a presumption of correctness, 28 U.S.C. 2254(d) (1980) and is supported by the record. Although one or the other of these two attorneys has represented petitioner at every crucial stage of the judicial process, in fact neither was his attorney at that date. Since Tinsley had no attorney on September 27th, the possibility of engrafting onto *Miranda* warnings additional questions about the right to have your attorney is not at issue under these facts.

The major issue in this appeal is whether Tinsley's uncounseled confession violated his sixth amendment rights. In resolving this issue we must decide whether it is possible, under these facts, to waive the sixth amendment right to counsel and whether Tinsley in fact waived that right. *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) established that the sixth amendment prohibits the use at trial of incriminating statements, "which federal agents had deliberately elicited from [the defendant] after he had been indicted and in the absence of his counsel." *Id.* at 206, 84 S.Ct. at 1203. In *Massiah* the incriminating statements were surreptitiously obtained from the defendant who was out on bail, therefore, there was no issue of whether the defendant had waived his right to counsel. In *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the Supreme Court noted that Williams had repeatedly asserted his right to counsel and that he did not waive that right. Williams had been arrested and arraigned and was in custody when he made inculpatory statements to police personnel. The Supreme Court reviewed the totality of the circumstances and found that Williams had not waived his sixth amendment right to counsel when the statement was elicited. The Court specifically noted that "[t]he Court of Appeals did not hold, nor do we, that under the circumstances of this case Williams *could not*, without notice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. It only held, as do we, that he did not." 430 U.S. at 405–6, 97 S.Ct. at 1243. (footnotes omitted; emphasis in original). In *Brown,* the *en banc* court acknowledged that a defendant may waive the sixth amendment right to counsel in the absence of his attorney if sufficient indicia of waiver are found. 569 F.2d at 238. *Brown* applied the waiver standard of "an intentional relinquishment or abandonment of a known right or privilege." *Id.* at 238, *quoting, Johnson v. Zerbst,* 304 U.S. 458,

464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938).

The question of the admissibility of un-counseled post-indictment statements has yielded an array of standards.[2] Most fed-eral courts of appeal have rejected a *per se* exclusion of such statements, holding in-stead that waiver is possible. *United States v. Clements,* 713 F.2d 1030 (4th Cir.1983); *Fields v. Wyrick,* 706 F.2d 879 (8th Cir.1983); *Cahill v. Rushen,* 678 F.2d 791 (9th Cir.1982) (acknowledges that state may show waiver but rules did not in this case of post-trial confession); *United States v. Mohabir,* 624 F.2d 1140 (2d Cir. 1980); *United States v. Brown,* 569 F.2d 236 (5th Cir.1978) (*en banc*); *United States v. Monti,* 557 F.2d 899 (1st Cir.1977); *United States v. Cobbs,* 481 F.2d 196 (3d Cir.1973), *cert. denied,* 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973). No circuit has yet embraced a *per se* exclusion. *But see United States v. Thomas,* 474 F.2d 110 (10th Cir.1973), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973) (ABA canon of ethics prohibits communication with a defendant who has an attorney with-out notifying the attorney, but this is not constitutional basis for reversal); *United States v. Durham,* 475 F.2d 208 (7th Cir. 1973) (Swygert, Chief Judge, would adopt *per se* exclusion rule).

The Second Circuit has adopted the most stringent standard of waiver. Not only must it be shown that the waiver was knowing and intelligent but also that the indicted individual has been informed of the indictment and has had his sixth amend-ment rights explained to him by a judicial officer. *United States v. Mohabir,* 624 F.2d at 1153. The *Mohabir* holding is very strong because it, in effect, adopts a *per se* exclusion for any uncounseled statement occurring between the indictment and the first judicial appearance. In the instant case, Tinsley's uncounseled statement oc-curred after his indictment and arraignment and thus would meet the *Mo-*

*habir* test if it is otherwise shown to be a valid waiver. In *United States v. Clem-ents,* 713 F.2d 1030 (4th Cir.1983) the court ascribed to the *Mohabir* standard to the extent that the state must show that the defendant knew he was indicted before he made an uncounseled statement. *Id.* at 1036. The Fourth Circuit did not proscribe the manner in which the defendant must learn of his indictment.

The Supreme Court has applied the same standard for gauging waiver for both fifth and sixth amendment rights. *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981) (fifth amend-ment); *Brewer v. Williams,* 430 U.S. 387, 402, 97 S.Ct. 1232, 1241, 51 L.Ed.2d 424 (1977) (sixth amendment). This standard is that of *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) which is embraced by the *en banc* court in *United States v. Brown,* 569 F.2d at 238. Other circuits and the dissent in *Brown* have suggested "higher standards" but we are bound by *Brown.* *See also, Fields v. Wyrick,* 706 F.2d at 881 (acknowl-edging this standard applies to the sixth amendment). We do not think the factual differences between *Brown* and the instant case are reason to disregard the standard of waiver announced in *Brown.* *See Government of Canal Zone v. Sierra,* 594 F.2d 60, 69 (5th Cir.1979).

■ In the abstract we cannot give meaning to the components of waiver: the knowing and voluntary relinquishment of the right to counsel. We can, with exact-ing scrutiny, test petitioner's conduct against this standard. When evaluating whether the state has proved waiver, courts indulge in every reasonable pre-sumption against waiver. *Brewer v. Wil-liams,* 430 U.S. at 404, 97 S.Ct. at 1242. Tinsley's interrogation took place in the CID Bureau of the Sheriff's office. Two detectives testified about the incident. De-tective Tillman testified that he explained to Tinsley his constitutional rights and that

---

**2.** Our discussion of waiver assumes that since Tinsley had been indicted, for sixth amendment purposes it is irrelevant that he in fact had no attorney representing him during the period in which he made his statement.

Tinsley indicated he understood all of these rights and was willing to waive them.[3] Petitioner then signed a written waiver of rights form and proceeded to make his statement. The petitioner testified that the two detectives threatened him with capital punishment if he did not confess. The detectives denied this. The Alabama Criminal Appeals Court found that when Tinsley confessed, he intended his statement to show that an accomplice was the trigger man. He wanted to shift the primary responsibility for this crime off him. In this effort, Tinsley was successful. The state subsequently nol prossed the capital indictment and re-indicted Tinsley for noncapital murder. He was tried under the second indictment.

Despite the lengthy course of this case no court has yet determined who initiated the interview on September 27th that yielded Tinsley's confession. Tinsley testified that the police detectives initiated the contact and summoned him from his jail cell. R.Vol. 1 at 135. The detective's testimony on this question is unclear due to a hearsay objection. R.Vol. 1 at 99. Our discussion

of waiver therefore proceeds without knowing who initiated the interview.[4] We note that in *Brown*, the F.B.I. agents initiated the non-custodial interrogation. *See also, Jordan v. Watkins*, 681 F.2d 1067 (5th Cir.1982).

Petitioner has never asserted that his statement was untrue. He testified at trial that he read his rights on the form and then signed the waiver. Petitioner has also never suggested that his statement was not voluntary. The trial judge ruled the confession admissible over sixth amendment objections[5] and based his ruling on *Thomas v. State*, 373 So.2d 1149 (Ala.Cr. App.1979) *vacated on other grounds*, 448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980). *Thomas* held there is no *per se* sixth amendment prohibition against uncounseled confessions when the defendant has counsel which is not present. In *Thomas*, the statement was admissible because *Miranda* warnings had been given and the necessary voluntariness was demonstrated. *Id.* at 1158.

The state appellate court found Tinsley's statement was voluntarily uttered. 395

---

3. The detective testified that he informed Tinsley of his rights as follows:

   Well, I told Mr. Tinsley that before we ask you any questions that you must understand your rights; that you have the right to remain silent; anything that is said will and can be used against him in Court; that you have a right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning, if you desire. I told Tinsley, I said, if you cannot afford a lawyer one will be appointed for you before any questioning, if you wish. I said, Mr. Tinsley, I said, if you decide to answer questions now without a lawyer present you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer. And then at the bottom of the page is the waiver of his rights and I told him, I said how about reading this and make sure you fully understand it. I have written—at the bottom of the waiver it says I have read the statements of my rights. I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises, threats or inducements have been made to me. No pressure or coercion of any kind have been used against me. R.Vol. II at 99–100.

4. It is not necessary to remand this case to find out who initiated the interview because the "initiation" question only becomes crucial when a defendant has invoked the right to counsel. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) held only that once the right is invoked then the defendant must initiate any future interrogation and valid waiver must be shown. *Wyrick v. Fields*, 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982) (*per curiam*). In *Oregon v. Bradshaw*, —— U.S. ——, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) this two step analysis was reiterated. Since petitioner never invoked the right to counsel in this case we need not ask the *Edwards'* initiation question. We instead proceed directly to the question of waiver. It is of course helpful to a waiver analysis to know who initiated the contact for if Tinsley did, it would be a further sign of waiver. Here, we do not make any assumptions about who initiated the conversation.

5. The contention that the statement should not be admitted in evidence was raised as an objection at trial. Evidence and argument were presented outside the jury's presence and the judge overruled the objection.

So.2d at 1075. This finding is entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Sumner v. Mata,* 449 U.S. 539, 544–45, 101 S.Ct. 764, 767–768, 66 L.Ed.2d 722 (1981); *Hance v. Zant,* 696 F.2d 940, 957 *cert. denied,* (11th Cir.), —— U.S. ——, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983). Based on these facts we must determine as a matter of federal law, whether petitioner waived his right to counsel. *Brewer v. Williams,* 430 U.S. at 397 n. 4, 97 S.Ct. at 1239 n. 4. The United States Magistrate found that these facts showed constitutional waiver. The magistrate, however, recited numerous procedural bars to review of the waiver issue. We reach the waiver issue and test these facts against the constitutional standard.

Because Tinsley had been indicted and arraigned the independent judicial process had intervened to explain his constitutional rights. *See United States v. Mohabir,* 624 F.2d at 1153. He thus knew of the capital indictment and had had his rights explained to him on numerous occasions. At his arraignment he was represented by appointed counsel.[6] These facts indicate that Tinsley understood the rights explained to him by the detectives. He knew what rights were involved. His actions were knowing and intelligent.

Tinsley testified that he read the waiver form before signing it. In *United States v. Lord,* 565 F.2d 831 (2d Cir.1977) the court similarly found a waiver of the sixth amendment right to counsel where the defendant signed a waiver and did not exhibit any signs of incapacity. The written waiver is a good indication of intentional relinquishment. As we noted, the state court found that Tinsley wanted to speak to police officers to show that he should not be charged with capital murder. We conclude that petitioner intentionally relinquished his right to counsel.

Petitioner's testimony that he was threatened with the electric chair was contradicted by the detectives. No other evidence was presented to show that Tinsley was coerced in any way. The totality of the circumstances leads us to conclude, as did the state courts, that petitioner acted voluntarily. We find that petitioner's statement was the product of an intentional relinquishment of a known right. By his own testimony he admits he waived the right to counsel.

■ *United States v. Brown* and the vast weight of authority permit waiver of the sixth amendment right to counsel. In this case, where petitioner had been indicted and arraigned, signed a waiver form and testified to this effect we conclude that the right to counsel was waived. We therefore AFFIRM the district court's denial of this petition.

CLARK, Circuit Judge, specially concurring:

I concur in the result reached on the issue of whether Tinsley made a waiver of the right to counsel. Nevertheless, I write to express concern over the holding that *United States v. Brown,* 569 F.2d 236 (5th Cir.1978) (en banc), should control the issue of sufficiency of warnings. The majority opinion establishes law unnecessary to the narrow facts. There are situations in which a reading of *Miranda* rights is insufficient protection of a defendant's sixth amendment right to counsel. *Brown* was, by its terms, a limited ruling. The court noted:

> Even though the F.B.I. agent assumed Mary Brown had counsel, we do not mandate that *Miranda* warnings include a specific question naming counsel and an asking if he or she wants that particular attorney present. Under the facts of this case the *Miranda* warnings were

---

**6.** The state court finding that petitioner was not in fact represented by any attorney during this period has been accepted by this panel. Whether petitioner was represented by a specific attorney during this period is not determinative of the sixth amendment issue. There is some conflicting testimony in the record about whether or not the detectives called Mr. Brutkiewicz. 395 So.2d at 1074. The United States Magistrate found that the specific questions about counsel were not asked. No court has found whether or not Mr. Brutkiewciz was notified before the interrogation.

sufficient, when dealing with a well-educated teacher, to make clear that "an attorney" includes the state public defender already appointed.

569 F.2d at 239 (footnote omitted). The majority of the court found that under the *particular facts* of that case, there was no need for the officers to ask additional questions about whether she had a lawyer and wanted him present. The majority went on to note that although the FBI's choice of a location for questioning Mrs. Brown, a courthouse corridor, was inappropriate, it was a public place. The questioning in *Brown* was distinguished from a forced or custodial interrogation. 569 F.2d at 239.

The present case presents quite different circumstances and the differences are important. Whether or not Tinsley had counsel on the day he talked to the detectives, he did have the right to counsel. *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424, 436 (1977). The fact that the right to counsel had already attached when Tinsley was interrogated distinguishes this case from *Brown.* In *Brown,* the question of whether Mrs. Brown had a right to counsel was left unanswered since the court found a voluntary and knowing waiver of that right.[1] In addition, Tinsley, unlike Mary Brown, was interrogated in a custodial setting. He was not in control of the circumstances of the interview. Since *Brown* concluded that the circumstances did, to a large extent, determine that additional questions were not required, it should not now be extended to stand for the proposition that such questions are never necessary.

Factually, this case more closely resembles *Clifton v. United States,* 341 F.2d 649

(5th Cir.1965). In *Clifton,* the appellant claimed, and in reversing the appeals court agreed, that the trial court erred in admitting an incriminating statement made one week before his indictment on charges of transporting a stolen vehicle in interstate commerce. Clifton argued that the *Massiah* doctrine rendered inadmissible all confessions obtained in the absence of counsel once the right to counsel has attached. *Id.* at 651. The court found that Clifton did have the right to counsel since the process had shifted from investigatory to accusatory.[2] The court also found that although Clifton had initiated the contact with the federal agents, they should have made a reasonable effort to ascertain whether the prisoner had counsel and whether he wanted counsel present. Clifton had apparently asked the police to call his attorney and claimed that although he was read his rights no mention was made of his attorney or his right to have one present. The court found that the burden of making such an inquiry was not unreasonable where the defendant was young, unskilled in the law and where he had been in custody for over two months unable to contact his attorney at will. 341 F.2d at 652. The facts of *Clifton* include a prisoner with a right to counsel in a custodial interrogation. *Clifton* created a duty for interrogating officers to make a reasonable attempt to ascertain whether such an accused has an attorney and desires his presence. *Id.* at 653. *Clifton* was not overruled in *Brown* and therefore is still good law. As the summary of the facts and holdings indicate, however, *Clifton* also has its limits. The *Clifton* court made it clear that it was

---

**1.** The majority in *Brown* specifically noted that the question of whether Mary Brown had a right to counsel was being left unanswered. 569 F.2d at 236. In addition, Judge Hill in his concurrence clarified that *Brown* did not present a *Brewer* situation in which the right to counsel had attached. Mary Brown did not have any counsel, retained or appointed, representing her in the federal investigation being carried on by the FBI agents. 569 F.2d at 239.

**2.** As the Supreme Court explained in *Brewer v. Williams:*

Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time judicial proceedings have been initiated against him—"whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois, supra,* 406 U.S. at 689, 92 S.Ct. at 1882.

430 U.S. at 398, 97 S.Ct. at 1239, 51 L.Ed.2d at 436.

not reaching the question of admissibility of statements given under the same circumstances where the accused has clearly and unequivocally waived the right to counsel.

There appears to have been such a voluntary and knowing waiver of the right to counsel in the present case. *Brewer v. Williams* divided the government's burden of proof on whether a defendant has waived counsel into two parts: 1) proof that the defendant *understood* his right to counsel, and 2) proof that he affirmatively *relinquished* the right.[3] Tinsley knew about his right to counsel. Unlike Clifton, he had already been indicted and therefore informed about his rights and the serious nature of the charges against him. There is no reason to believe that he, like Clifton, was intimidated by the police officers.[4] There was testimony that Tinsley was informed of each of his rights and agreed to waive them. He read and signed a waiver form.[5] Moreover, the largely exculpatory nature of his statement, on the issue of the actual commission of the murder, indicates a willingness to talk in order to clear himself as the triggerman.

The failure to ask the additional questions about counsel in this case should not have rendered this confession inadmissible. Nevertheless, *Clifton* stands as support for the proposition that before obtaining a statement some care should be exercised in a custodial interrogation to insure a prisoner's knowledge of his right to counsel and presence of that counsel.

---

**3.** This explanation of what a court should look for in determining whether there has been a waiver was given in dissent to the en banc *Brown* decision. 569 F.2d at 246 (Simpson, J., dissenting).

**4.** As noted in the summary of the case, the *Clifton* court placed emphasis on the defendant's youth, his obvious unfamiliarity with the law, and his inability to contact his attorney at will. The implication appears to be that Clifton was completely within the power of the FBI agents who came to interrogate him.

**5.** Whereas a waiver is a good indication of intentional relinquishment of the right to counsel, it is not determinative. The defendant in *Clifton* had also signed a waiver form which the court found could not be considered a clear and unmistakable waiver in light of Clifton's age, experience and the circumstances of the case. 341 F.2d at 653 n. 10.