Robert Dale **HENDERSON**,
Petitioner–Appellant,

v.

Harry K. **SINGLETARY**, Secretary,
Florida Department of Corrections,
Respondent–Appellee.

No. 88–3680.

United States Court of Appeals,
Eleventh Circuit.

July 30, 1992.

Billy H. Nolas, Office of Capital Collateral Representative, Larry H. Spalding, Martin J. McClain, Tallahassee, Fla., for petitioner-appellant.

Richard B. Martell, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellee.

Before FAY and HATCHETT, Circuit Judges, and CLARK, Senior Circuit Judge.

CLARK, Senior Circuit Judge:

Upon the request of one of the active judges of the court to reconsider Part II of our opinion of February 20, 1991, 925 F.2d 1309, we hereby modify our previous opinion by deleting Part II.B, found at page 1314, and substitute the following Part II.B:

B. *The Confession to Perez*

On February 11, 1982, Officer Perez of the Hernando County sheriff's office met

with Henderson in the Putnam County jail. Perez testified, "[Henderson] advised me that he would not talk to me at that time, for me to return to Hernando County, obtain the necessary paperwork, return to pick him up, at which time it would be a long ride back and we'd see what happens in the interim." No further statement was taken. On June 11, 1982, Perez and another officer transported Henderson from the Raiford State Prison to Hernando County, a car trip of several hours. Henderson was at this time represented by counsel in both Putnam and Hernando Counties. During the trip, Perez read Henderson his rights and then showed him a picture of one of the victims, asking, "Do you recognize the person in this picture?" Henderson replied, "No comment." A few minutes later, Perez again asked about the murders. Henderson replied, "I already told other detectives and I know about what you're investigating, and I know you have copies of my statement." Perez replied that he wanted to have clarification of some of the events surrounding the murders, but Henderson remained silent, and Perez asked no more questions. Perez testified as to what happened next:

> We proceeded on the road. [The other officer] had to pull over to use the telephone to call in and advise our administrator ... that we were coming in. We were heading back. Just prior to [the other officer] stopping the vehicle to get out, Mr. Henderson advised me, "Give me a Pepsi and a pack of Winstons and I'll tell you about this shit," at which time [the other officer] asked me if I wanted something. I said, "Yeah. You can get me a Pepsi." I just wanted a Pepsi, but he did come back with a pack of Winstons and a Pepsi for Mr. Henderson. A few mo-

ments thereafter as we were driving down the road, [Henderson] went on to explain and tell me about the case.

1. *Perez' Questions*

a. Right to Counsel

██ *Edwards v. Arizona*[1] interprets the fifth amendment as requiring that "an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."[2] Perez' questions did not violate *Edwards*. We found in Part II.A. of our original opinion that Henderson had waived his previously invoked right to counsel when he initiated his first confession. No further invocation of the right to counsel appears in the record. Moreover, Perez testified that when he picked Henderson up at the Raiford State Prison, he was provided with Henderson's signed waiver of the right to counsel. Henderson had not invoked his right to counsel when Perez picked him up; therefore, no *Edwards* violation occurred.

██ Henderson also argues that his sixth amendment right to counsel had attached at the time of Perez' questioning. Henderson indeed had appeared in "adversary judicial proceedings"[3] in relation to the murders in Putnam County, but Henderson had not appeared in any adversary judicial proceedings with respect to the Hernando County murders. Indeed, counsel was not appointed for Henderson until the day after his confession to Perez, and Henderson was not indicted until five days after the confession. We are thus not confident that Henderson's sixth amendment rights had attached at this time.[4]

---

1. 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

2. 451 U.S. at 484–85, 101 S.Ct. at 1885.

3. *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (holding that prisoners suspected of having committed murder during incarceration did not

possess a sixth amendment right to counsel while in administrative segregation and prior to initiation of adversary judicial proceedings).

4. *See Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (pre-existing attorney-client relationship did not create sixth amendment right to counsel); *United States v.*

Were we to hold that Henderson's sixth amendment right to counsel had attached at the time of his second confession, we would nevertheless find no constitutional violation in Perez' questions. After Henderson's conviction was final, the Supreme Court determined that *Edwards'* requirement that police not initiate an interrogation after a defendant has asserted his right to counsel would also apply in the sixth amendment context.[5] However, *Michigan v. Jackson* created a new rule of law that is not to be applied retroactively [6] under *Teague v. Lane.*[7] The law prior to *Jackson* was that sixth amendment rights could be waived if a "knowing and voluntary relinquishment" [8] is shown. We find such a waiver in part II.B.3 below.

b. Right to Terminate Interrogation

It is a close question whether Perez should have ceased any further questioning after Henderson replied that he had "no comment" to Perez' first question concerning the photograph. This circuit has held that, following an equivocal request to halt an interrogation, "the only proper course of action [is] to attempt to clarify whether [the defendant] indeed intended to invoke his right to cut off questioning." [9] Henderson's first response only showed that he did not want to discuss the photograph. Perez was justified in asking a second question to determine whether Henderson would talk about other aspects of the crime. Henderson's second response was more on point, indicating that he had already made a statement. Given this response, Perez' third question pushed the limit of acceptability. However, we believe that this third question was essentially an attempt at clarifying whether Henderson was willing to explain events not covered by the first confession. The appropriateness of the continued questioning is bolstered by Henderson's statement to Perez in February that he might be willing to talk during the ride to Hernando County. After the third clarification, Henderson's request to remain silent was "scrupulously honored." [10] We therefore find no violation of constitutional magnitude in Perez' questions.[11]

Even were we to find Perez' continued querying improper (which we do not), the resulting statement would still be admissible since Henderson both initiated the dialogue *and* waived his previously-asserted rights to silence and counsel.[12] Both of these tests are satisfied in Henderson's case.

2. *Initiation*

We find that Henderson initiated the confession, because a sufficient period of time elapsed between Perez' requests for Henderson to confess and Henderson's initiation of his confession. We note that "for a 'significant period' following a request to cut off question-

---

*Langley,* 848 F.2d 152, 153 (11th Cir.1988) ("The mere filing of a complaint and the issuance of a warrant" does not create sixth amendment right).

5. *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

6. *Collins v. Zant,* 892 F.2d 1502, 1510–12 (11th Cir.1990).

7. 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

8. *Tinsley v. Purvis,* 731 F.2d 791, 794 (11th Cir. 1984).

9. *Martin v. Wainwright,* 770 F.2d 918, 924 (11th Cir.1985); *see also Delap v. Dugger,* 890 F.2d 285, 290 (11th Cir.1989) ("It is well settled that even an equivocal invocation by the suspect of the right to cut off questioning requires that the

interrogation cease, and further questions are limited to clarifying whether the suspect in fact desires to terminate the interrogation." (citations omitted)); *Nash v. Estelle,* 597 F.2d 513, 517 (5th Cir.1979) (en banc) (discussing permissible clarification of right to counsel).

10. *Michigan v. Mosley,* 423 U.S. 96, 103, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975) (citation omitted).

11. *Cf. Lightbourne v. Dugger,* 829 F.2d 1012, 1019 (11th Cir.1987) ("[A]fter the police attempted to clarity petition's question, petitioner spontaneously resumed discussions concerning the gun and the necklace without inducement.").

12. *Christopher v. Florida,* 824 F.2d 836, 844 (11th Cir.1987); *see also Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984).

ing, ... the police are barred from interrogating [a suspect]."[13] However, we do not believe the same time standard necessarily applies to a situation in which the police discontinue questioning and the defendant subsequently initiates a confession. The "significant period" standard was developed for situations in which the police are asked to stop questioning and then resume questioning.[14] It does not make sense to apply the same time standard to situations in which the defendant controls the time period between the end of police questioning and the start of a defendant-initiated confession. Courts must instead satisfy themselves that the defendant-initiated confession was not the product of improper police questioning or pressure.[15] We believe that one, but not the only, measure of the voluntariness of a defendant-initiated confession is the more flexible measure of whether a sufficient period of time has elapsed since the termination of police questioning for the defendant to have rationally reflected on the choice before him.[16]

Perez did not testify as to how much time elapsed after his last question and before Henderson offered to confess. However, as quoted above, he did state that they "proceeded on the road" in silence following the last question. Prompted only by the officers' actions in stopping the car to report to headquarters that they were nearing their destination, Henderson spontaneously changed his position and declared that he would talk. Only after the phone call was made, the trip was resumed, and Henderson's rights were again read to him did Henderson give his statement.

These events indicate that a sufficient amount of time elapsed for Henderson to have rationally reconsidered his earlier refusal to talk. Perez did not merely switch the topic of conversation or briefly interrupt his interrogation in response to a request from Henderson. The questioning ceased completely.[17] Even assuming that Perez and Henderson were silent for just a short period of time, Henderson's turn-about was provoked by his own desire for refreshments, not by the badgering of the police.

Moreover, Perez never offered Henderson *anything* in exchange for his testimony. The Pepsi and the cigarettes were provided after Henderson asked for them, not after Perez offered them or threatened to withhold them in exchange for a confession. This case, involving only a bare request for a confession, must be distinguished from similar cases in which the police through implicit or explicit promises or threats induce a confession.[18] Perez' questioning provided Henderson with no information except

---

**13.** *Christopher*, 824 F.2d at 844 (citation omitted).

**14.** *See, e.g., United States v. Hernandez*, 574 F.2d 1362, 1369 (5th Cir.1978).

**15.** *Cf. United States v. Evans*, 917 F.2d 800, 805 (4th Cir.1990) (finding confession admissible; "Approximately 55 minutes had elapsed between the time that [the police] informed [the defendant] in the automobile of what would happen at processing and before the magistrate, and the time that Evans initiated further conversation and indicated that he wished to cooperate.").

**16.** *See United States v. Gomez*, 927 F.2d 1530, 1538 n. 8 (11th Cir.1991) ("It may be possible for enough time to elapse between the impermissible further interrogation and the 'initiation' that the coercive effect of the interrogation will have subsided. Here, however, ... the few minutes during which Gomez was being escorted to [the] holding cell [does not] constitute time sufficient to overcome the coercion of the interrogation."); *Robinson v. Percy*, 738 F.2d 214, 221 (7th Cir.1984) ("Robinson emphasizes that only a couple of minutes elapsed between the captain's illegal questioning and his own confession. Although this was not a lengthy break in time, we believe that several other factors show that Robinson's confession was independent of his earlier statements.").

**17.** *Cf. Christopher*, 824 F.2d at 846 ("[W]e conclude that, because the initial police-initiated interrogation was still in progress when Christopher asked the question at issue, this question was not an 'initiation;' rather, it was merely a question posed during the course of an on-going police-initiated interrogation.").

**18.** *Cf. United States v. Gomez*, 927 F.2d at 1537 ("[T]he agents here continued to talk to Gomez, stressing the importance of cooperating.").

that the police were interested in receiving a further statement from him (which Henderson already knew from the February conversation with Perez). Therefore, Henderson's decision to talk was not clouded by improper threats or promises. Indeed, Henderson may have felt that he had little to lose in confessing, given that the police already had one complete statement from him. We conclude that Henderson simply changed his mind.

This court's precedents clearly hold that where a suspect changes his mind with regard to giving a confession to the police—even after an invocation of the right to counsel—the confession is admissible. For example, in *Moore v. Dugger*,[19] we held that "[i]f a suspect clearly, of his own volition, changes his mind about wanting counsel, we see nothing ... to require that the withdrawn request for counsel continue in force."[20] In *Moore*, the suspect asked for counsel; questioning stopped; and then the suspect said, "Never mind, I'll finish telling you right now."[21] As in Henderson's case, the police did not provide Moore with any further reason to talk, and the confession was held admissible. Although some might contend that Henderson's trade of a confession for a soft drink and a smoke was ill-taken, there is nothing in the record before us to indicate that, as in *Moore*, it was not initiated and volunteered by Henderson.

### 3. *Waiver*

 For waiver of Henderson's rights to counsel and to silence to have taken place, there must have been "an intentional relinquishment or abandonment of a known right or privilege."[22] The record clearly reflects such a waiver. Henderson's rights were read to him twice prior to the second confession, and he explicitly waived his rights before beginning the confession. Henderson's negative responses to Perez' questions show that he knew he was under no compulsion to talk. Prior to his first confession, Henderson had similarly waived his rights to counsel and to silence, knowing that he was going against his attorney's advice. Aspects of the second confession were exculpatory, in that Henderson claimed his victims were plotting to kill him and to commit other crimes prior to their murder. This fact makes it more likely that Henderson voluntarily decided to confess despite his knowledge that he had a right not to talk further. We accordingly find that Henderson intentionally relinquished his known rights.[23]

### 4. *Conclusion*

To sum up our discussion of this issue, we believe that Perez' questions were merely clarifications of Henderson's willingness to talk. Even if Perez' questions were improper, we believe that Henderson voluntarily initiated his confession and waived his rights. We therefore reaffirm our original conclusion that the confession to Perez was properly admitted.

The Petition for Rehearing is DENIED and no member of this panel nor other Judge in regular active service on the court having requested that the court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35–5), the Suggestion of Rehearing En Banc is DENIED.

**19.** 856 F.2d 129 (11th Cir.1988).

**20.** *Id.* at 133.

**21.** *Id.*

**22.** *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

**23.** *See Tinsley*, 731 F.2d at 796 (finding valid waiver under similar circumstances).